J-S38034-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
MICHAEL DAVID, :
:
Appellant : No. 3029 EDA 2013

Appeal from the PCRA Order Entered October 25, 2013,
In the Court of Common Pleas of Philadelphia County,
Criminal Division, at No. CP-51-CR-0402281-2006.

BEFORE: FORD ELLIOTT, P.J.E., BOWES and SHOGAN, JJ.

MEMORANDUM BY SHOGAN, J.: **FILED OCTOBER 21, 2014**

Appellant, Michael David, appeals from the denial of his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546. We affirm.

In Appellant's direct appeal, we recited the relevant facts as summarized by the trial court, as follows:

On December 3, 2005, at around 11:10 a.m., Officer Thomas Quinn and Sergeant Michael Colello, of the Philadelphia Police Department, while in their respective patrol cars on the 3100 block of Jasper Street, heard a loud noise which sounded like a gunshot. Notes of Testimony (N.T.) 2/5/08 at 108-131; N.T. 2/6/2008 at 15-17. Both officers then drove northbound on Jasper towards the 1800 block of Clementine Street, when a call regarding a shooting came over police radio. N.T. 2/5/08 at 114. As he reached the intersection, Officer Quinn was flagged down by a woman who told him that there was a man laying on the sidewalk on South Clementine Street. *Id*. at 119-20. Officer Quinn found Craig Clayton (victim) on the

ground; he was non-responsive and was having a hard time breathing. Medics pronounced him dead at the scene. *Id*. at 123. Sergeant Colello immediately attempted to gather information and question witnesses as to what they may have seen that morning. N.T. 2/6/08 at 21. One witness relayed that a Black male wearing a green jacket, green pants, and carrying a black trash bag had run towards Kensington Avenue. *Id*. at 22, 24-25.

On the previous night, December 2, 2005, Hector Caceres, a resident of Clementine Street, had arrived home at approximately 9:30 p.m. N.T. 2/5/08 at 265. As he parked his car, Mr. Caceres noticed two Black men whom he did not recognize. *Id*. at 266. One of the men stood next to a tree at Stouton and Clementine Streets. *Id*. He had on a dark, heavy coat and a black hat. *Id*. The other man stood across the street. *Id*. An hour later, at approximately 10:30 p.m., Monica Yancey, another resident of Clementine Street, left her home. N.T. 2/7/08 at 204. She was on the way to the store when she noticed two men, whom she did not recognize, standing on the corner of Stouton and Clementine. *Id*. at 204-05. Ms. Yancey felt uneasy and decided to go back inside of her house rather than go to the store. *Id*. at 205.

At 10:40 the next morning, December 3, 2005, Mr. Caceres was on his way to the corner store when he noticed that the same men he had seen the night before were standing in the same locations. N.T. 2/5/08 at 267-68, 273, 277-79. That same morning, Brandy Saunders was walking towards her mother's house on Clementine Street when she noticed two Black men at the intersection of Ruth and Clementine. N.T. 2/6/08 at 130-31, 133. As she walked past them, the shorter of the two called out to her while the taller man spoke on a cell phone. *Id*. at 134, 136. She overheard the taller man on the phone say "it's about to happen in five minutes." *Id*. at 134-36. Ms. Saunders then entered her mother's home and approximately five minutes later she heard a loud noise that sounded like a gunshot. *Id*. at 138-39.

Around the same time, Ms. Yancey heard a popping sound which she believed to be a car window breaking. N.T. 2/7/08 at 216-17. She quickly went outside to investigate the noise, and

observed the defendant and co-defendant [Jones] across the street. *Id*. at 216-19. She yelled to them that she was going to call the police and Jones ran towards Kensington Avenue while the defendant ran towards Jasper Street. *Id*. at 225-26. Ms. Yancey noticed that, as he ran, Jones carried a black garbage bag underneath his arm. *Id*. at 229. A neighbor then informed Ms. Yancey that there was a body on the ground. *Id*. at 236.

B.O., a resident of Jasper Street, was retrieving clothing from her aunt's minivan on Clementine Street when she heard people arguing. N.T. 2/5/08 at 216-22. She turned and saw three men-two were arguing and the third was talking on his cell phone. *Id*. at 222-24. She then realized that the taller of the two quarreling men was pointing a gun toward the other man's face as he backed away with his hands up. *Id*. at 224-25. B.O. saw the taller man shoot him, and she began running back towards her aunt's house. *Id*. at 225-29. As she ran, she saw the taller man running in her direction. *Id*. at 227-29. She entered her aunt's home, but did not observe in what direction the man then ran. *Id*. at 232.

At the scene, officers recovered from the victim's person the following items: jewelry, money, a wallet, business cards, and a notebook. The notebook was opened to a page that contained: the address of 1833 Clementine; two telephone numbers, (215) 888-2400 and (267) 262-5094; the name "Mike"; and a notation which said "Size 12 Tims." N.T. 2/6/08 at 74-75.

In the early evening of December 3, 2005, the police located the victim's vehicle on the corner of Clementine and Jasper Streets. *Id*. at 263-266. Detective John Cahill found the victim's cell phone in the vehicle, along with a large quantity of sporting goods. N.T. 2/7/08 at 117-18. An investigation into the victim's cell phone records revealed that the last incoming call on the victim's cell phone was at 10:49 a.m. on December 3, 2005, from (215) 888-2400; the last outgoing call was at 11:04 a.m. to that same number. N.T. 12/12/08 at 214, 216. Detective Francis Kerrigan subpoenaed subscriber information and call records for (215) 888-2400 from Sprint Nextel for the period from December 2 to December 5, 2005. N.T. 2/6/08 at

223-24. This cell phone was found to be registered to Dolores Johnson, co-defendant Jones' grandmother. *Id*. at 226; N.T. 2/7/08 at 112. The phone records revealed that the last call between Dolores Johnson's cell phone and the victim's cell phone occurred on December 3, 2005, at 11:04 a.m. N.T. 2/6/08 at 237.

On December 20, 2005, Ms. Yancey identified the defendant in a photo array. N.T. 2/7/08 at 243. On December 22, 2005, at approximately 6:15 a.m., an arrest and search warrant were executed and the defendant was arrested at his residence at 4649 Tackawanna Street, in Philadelphia. N.T. 2/7/08 at 133-34; N.T. 12/12/08 at 180.

Trial Court Opinion, 12/3/08, at 2-5 (footnotes omitted).

***Commonwealth v. David***, 2309 EDA 2009, 988 A.2d 717 (Pa. Super. filed November 25, 2009) (unpublished memorandum at 1–4).

Appellant was charged with murder and related offenses. He originally went to trial in June 2007, but when the jury was unable to reach a verdict, the court granted a mistrial. Appellant's retrial in February 2008 before a jury occurred in conjunction with co-defendant Christopher Jones. Appellant was found guilty of second degree murder, robbery, possessing instruments of crime ("PIC"), and conspiracy. The court sentenced Appellant on February 15, 2008, to life imprisonment for murder with concurrent terms of twelve to sixty months and ninety to 180 months for PIC and conspiracy, respectively. Holding that robbery merged with murder for purposes of sentencing, the court did not impose a separate sentence for robbery.

Appellant filed post-trial motions, which the trial court denied following a hearing. Appellant then filed a timely appeal to this Court, raising seven issues. We affirmed the judgment of sentence on November 25, 2009. *David*, 2309 EDA 2008, 988 A.2d 717. Our Supreme Court denied Appellant's petition for allowance of appeal on May 4, 2010. *Commonwealth v. David*, 718 EAL 2009, 995 A.2d 351 (Pa. filed May 4, 2010).

On May 27, 2010, Appellant filed a *pro se* PCRA petition. The PCRA court appointed counsel, who filed an amended PCRA petition on November 18, 2011. Upon Appellant's request to proceed *pro se* on September 10, 2012, the PCRA court held a hearing on October 5, 2012, pursuant to *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1988); the PCRA court represented that Appellant "equivocated" at that hearing. PCRA Court Opinion, 12/12/13, at 2. On November 28, 2012, Appellant again requested to proceed *pro se*. The PCRA court held a second *Grazier* hearing[1] on January 31, 2013, following which the PCRA court concluded that Appellant's waiver of counsel was knowing, intelligent, and voluntary.[2]

---

[1] While there is no issue raised regarding Appellant's self-representation in this appeal, we note that neither transcript from the *Grazier* hearings is in the record certified to us on appeal.

[2] While the *Grazier* hearing was proceeding, Appellant filed a *pro se* motion to supplement the amended PCRA petition that was dated December 24, 2012, and filed December 31, 2012.

On February 15, 2013, Appellant filed a motion for additional discovery. The PCRA court held a hearing on June 4, 2013, and thereafter granted Appellant's request for additional discovery regarding two cellular telephones police had seized from his home. PCRA Court Opinion, 12/12/13, at 3.[3] On October 3, 2013, the PCRA court issued notice pursuant to Pa.R.Crim.P. 907, indicating its intent to deny Appellant's PCRA petition without a hearing. Appellant submitted a thirteen-page response dated October 8, 2013, which was filed on October 16, 2013. On October 25, 2013, the PCRA court dismissed the PCRA petition, and Appellant filed the instant timely appeal to this Court. Both the PCRA court and Appellant complied with Pa.R.A.P. 1925.

In his appellate brief, Appellant raises four of the five issues of ineffective assistance of counsel that he raised in his Pa.R.A.P. 1925(b) statement. Those four issues are as follows:

> 1. Was trial counsel ineffective for failure to investigate all phone records relevant in the trial, and did the PCRA Court err in dismissing this claim without a hearing?
>
> 2. Was trial counsel ineffective for failure to impeach Brianna O'Brien with her prior inconsistent statement, and calling [Detective] Santamala and Kelly O'Brien? Also, did the PCRA court err in dismissing this claim without a hearing?
>
> 3. Was appellant['s] counsel ineffective for failure to properly challenge second degree murder, in the petitioner's insufficient

---

[3] Appellant has not included notes of testimony from the June 4, 2013 hearing referenced by the PCRA court in the record certified to us on appeal.

evidence claim? Also did the PCRA court err in dismissing this claim without a hearing?

4. Was [A]ppellant['s] counsel ineffective for failure to raise a violation of the Due Process Clause of the U.S. Constitution as well as the PA. state Constitution pertaining to the impermissible hearsay claim? Also, did the PCRA Court err in dismi[s]sing this claim without a hearing?

Appellant's Brief at 4.

Our Supreme Court recently reiterated the standard and scope of review when the PCRA court dismisses cognizable claims without a hearing, as follows:

To obtain reversal of a PCRA court's summary dismissal of a petition, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief. The controlling factor in this regard is the status of the substantive assertions in the petition. Thus, as to ineffectiveness claims in particular, if the record reflects that the underlying issue is of no arguable merit or no prejudice resulted, no evidentiary hearing is required. For each such claim, we review the PCRA court's action for an abuse of discretion.

*Commonwealth v. Baumhammers*, 92 A.3d 708, 726–727 (Pa. 2014) (internal citations omitted).

In post-conviction collateral proceedings, the petitioner bears the burden to plead and prove eligibility for relief. *See* 42 Pa.C.S. § 9543(a). When considering an allegation of ineffective assistance of counsel, counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his or her conduct; and

(3) Appellant was prejudiced by counsel's action or omission. **Commonwealth v. Pierce**, 527 A.2d 973, 975-976 (Pa. 1987). "In order to meet the prejudice prong of the ineffectiveness standard, a petitioner must show that there is a reasonable probability that but for the act or omission in question the outcome of the proceeding would have been different." **Commonwealth v. Wallace**, 724 A.2d 916, 921 (Pa. 1999). A claim of ineffective assistance of counsel will fail if the petitioner does not meet any of the three prongs. **Commonwealth v. Williams**, 863 A.2d 505, 513 (Pa. 2004) (quoting **Commonwealth v. Rush**, 838 A.2d 651, 656 (Pa. 2003)).

Following our careful review of the record, the arguments of the parties, and our consideration of the applicable law, we conclude, except as relates to the first issue, that the well-reasoned, detailed opinion of the PCRA court thoroughly addresses the issues raised, and we adopt that opinion as our own.[4] We address the first issue Appellant raises on appeal separately because the PCRA court responded to a different claim due to Appellant's imprecise and vague wording in his statement of the issue in his Pa.R.A.P. 1925(b) statement.

The rambling, often inexplicable argument by Appellant challenges our ability, much like the PCRA Court's, to address Appellant's contention. It

---

[4] The parties are directed to attach a copy of that opinion in the event of further proceedings in this matter.

appears that in his first issue, Appellant is asserting that the PCRA court erred in denying his claim that trial counsel was ineffective for failing to investigate telephone records in this case. We agree with the Commonwealth that this issue is waived because Appellant failed to identify it with specificity in his Pa.R.A.P. 1925(b) statement.

In his *pro se* supplement to the amended PCRA petition that he filed on November 28, 2012, Appellant advanced trial counsel's failure to investigate telephone records, including the records for his own cellular telephone, and the cellular telephones used by three others: the victim, co-defendant Jones, and an unidentified person who called the telephone used by co-defendant Jones from telephone number (267) 825-3918 ("unidentified user"). In his Rule 1925(b) statement, Appellant had identified the following claim: "Was trial counsel ineffective for failure to investigate all phone records relevant in the trial, and did the PCRA Court err in dismissing this claim without a hearing?" 1925(b) Statement of the Petitioner, Michael David, 11/8/13, at 1. Appellant's phraseology of "all phone records" resulted in the PCRA court's consideration of trial counsel's alleged failure to investigate the records for the telephones recovered from Appellant's home. On appeal, Appellant instead focuses on the three telephones used by the victim, co-defendant Jones, and the unidentified

user.   Thus, Appellant's imprecision and lack of clarity in his Rule 1925(b) statement mislead the PCRA court to address an entirely different claim.

Rule 1925 requires that "[t]he Statement shall concisely identify each ruling or error that the appellant intends to challenge **with sufficient detail to identify all pertinent issues for the judge**."  Pa.R.A.P. 1925 (b)(4)(ii) (emphasis added).  The Rule further provides that "[i]ssues . . . not raised in accordance with the provisions of this paragraph (b)(4) are waived."  **Id**., (b)(4)(vii); **See also Commonwealth v. Hansley**, 24 A.3d 410, 415 (Pa. Super. 2011) (citations omitted) (Rule 1925(b) statement must be "specific enough for the trial court to identify and address the issue an appellant wishes to raise on appeal," and "if a concise statement is too vague, the court may find waiver."); **see also Greater Erie Indus. Development Corp. v. Presque Isle Downs, Inc.**, 88 A.3d 222, 224 (Pa. Super. 2014) ("Our Supreme Court intended the holding in [**Commonwealth v.**] **Lord**[, 719 A.2d 306 (Pa. 1998)] to operate as a bright-line rule, such that 'failure to comply with the minimal requirements of Pa.R.A.P.1925(b) will result in automatic waiver of the issues raised.'").  Accordingly, we conclude that Appellant's first issue is waived.  **Commonwealth v. Garang**, 9 A.3d 237, 244 (Pa. Super. 2010) (holding issues not included in the Pa.R.A.P. 1925(b) statement or raised in accordance with the provisions of Rule 1925(b)(4) are waived).

Even if not waived, the issue lacks merit. In initially raising this claim in the PCRA court, Appellant contended, without citing support, that trial counsel provided ineffective assistance because he failed to reveal that co-defendant Jones's telephone "was in contact with the 825# thirty-nine times, back and fourth [sic]," and "with the victim seventeen times, back and fourth [sic]." Motion to Proceed *Pro Se*, 11/28/12, at 1. Appellant contended that trial counsel "could have and should have use[d] this to undermine the prosecution's theory of a murder in the furtherance of a robbery." **Id**. In his brief, Appellant suggests that due to the myriad number of calls, "this murder was not in the furtherance of a robbery" because "no normal businessman would need to make so many calls back and forth for such a small purchase after business hours, if this was just your everyday transaction." Appellant's Brief at 7.

Appellant has failed to show how trial counsel's additional investigation into telephone records would have provided a new defense theory in this case. In his April 2, 2013, response to the Commonwealth's second motion to dismiss, Appellant cited to the notes of testimony from the July 24, 2008 post-sentence motion hearing to support his claim that trial counsel failed to properly investigate telephone records in this case. Petitioner's Response to Motion to Dismiss, 4/2/13, at unnumbered 1. In the first cited passage, the trial court asked counsel whether he had subpoenaed telephone records for

telephone number (267) 825-3918, the unidentified user. N.T., 7/24/08, at 51. Counsel confirmed that he had not sought records for that number from a telephone company but instead, had attempted to subpoena them from the father or stepfather of co-defendant Jones. *Id*. at 51–52. Counsel stated that he intended to present the testimony of co-defendant Jones's father "who could confirm the phone records." *Id*. at 52.

The telephone records in question had been discussed at trial through various witnesses. Philadelphia Detective Gregory Santamala testified that he was dispatched to the 1800 block of Clementine Street, where the murder occurred. N.T., 2/6/08, at 68. Detective Santamala inventoried the items removed from the victim's pockets. One item was a notebook containing the following information: "1833 Clementine, Mike, (215) 888-2400."[5] *Id*. at 75.

The direct testimony of Detective Francis Kerrigan, who was a Philadelphia homicide detective with a cross-designation as a task force officer assigned to the United States Drug Enforcement Administration, also referenced telephone records. N.T., 2/6/08, at 221. The detective testified that "[o]ne of the things I did on this task force is subpoena phone records in reference to the murder cases that we have here in Philadelphia." *Id*. at

---

[5] We note that throughout its brief, the Commonwealth frequently refers to this telephone number as (215) 888-**42**00, but the correct number in the notes of testimony is (215) 888-**24**00. N.T., 2/6/08, at 75.

222. Detective Kerrigan testified that he obtained records for cellular telephone number (215) 888-2400. That number was registered to Delores Johnson, co-defendant Jones's grandmother, and service to it was terminated on the day of the murder. *Id*. at 226–227, 253; N.T., 2/7/08, at 101–103. Detective Kerrigan testified that (215) 888-2400 had called unidentified user four times between 11:09 a.m. and 11:26 a.m., which was moments after the shooting. N.T., 2/6/08, at 238. He also testified that the unidentified user had contact with the victim's telephone multiple times on the night before and morning of the shooting. *Id*. at 230–237.

Appellant contends that trial counsel was ineffective for failing to investigate and present telephone records at trial, specifically referring to the contacts between the victim's cellular telephone and (215) 888-2400, the telephone belonging to Delores Johnson, as described above. Appellant's Response to Notice of Intent to Dismiss PCRA Petition Without a Hearing, 10/16/13, at 1. As noted, however, all of those telephone calls were described at trial. N.T., 2/6/08, at 230–237. To the extent Appellant suggests trial counsel should have investigated the communications between (215) 888-2400 and (267) 825-3918, unidentified user, Appellant has wholly failed to advance any suggestion as to the user's identity or any theory as to how that number would have provided a new defense theory.

Our review of the record reveals that the PCRA court gave Appellant substantial leeway to develop this claim by holding a hearing on Appellant's request for additional discovery concerning telephone records on June 4, 2013. As we noted *supra*, Appellant has failed to include the notes of testimony from that hearing in the record certified to us, but the Commonwealth asserts that it was compelled to provide Appellant "with a supplemental report addressing the phones recovered from his home." Commonwealth Brief at 27. We conclude that Appellant has failed to prove that the underlying claim is of arguable merit as he never substantiated that additional investigation into the telephone records would have provided any basis for relief. Thus, the PCRA court properly denied this claim.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/21/2014

PHILADELPHIA COURT OF COMMON PLEAS
CRIMINAL TRIAL DIVISION

COMMONWEALTH                    :

                                :           CP-51-CR-0402281-2006

        v.                      :
                                :           Superior Court Docket No.
                                :           3029 EDA 2013

MICHAEL DAVID

Sarmina, J.
December 12, 2013



7094966381

OPINION

PROCEDURAL HISTORY

On February 15, 2008, following a jury trial[1] before this Court,[2] Michael David (hereafter, petitioner) was convicted of murder of the second degree (H-2), robbery (F-1), criminal conspiracy (F-1), and possessing instruments of crime (PIC) (M-1).[3] That same date, this Court sentenced petitioner to the mandatory term[4] of life imprisonment for murder of the second degree.[5] On February 26, 2008, petitioner filed post-sentence motions. On June 19, 2008, petitioner supplemented his post-sentence motions with a motion for a new trial based on after-discovered evidence. On July 24, 2008, this Court held a hearing concerning petitioner's after-discovered

---

[1] Petitioner was represented at trial by Samuel Stretton, Esquire. Petitioner was tried along with Christopher L. Jones (Jones), who was convicted of murder of the third degree (F-1), robbery (F-1), and criminal conspiracy (F-1).

[2] In June 2007, petitioner had been tried by a jury for killing Craig Clayton (Clayton). This Court granted a motion for judgment of acquittal as to the charge for murder of the first degree. The next day, this Court declared a mistrial after the jury announced that it was hopelessly deadlocked as to the remaining charges.

[3] 18 Pa.C.S. §§ 2502(b), 3701(a), 903(a), and 907(a), respectively.

[4] 18 Pa.C.S. § 1102(b).

[5] As to the conviction for criminal conspiracy, petitioner was sentenced to a concurrent term of not less than seven-and-a-half years nor more than 15 years confinement. As to the conviction for PIC, this Court sentenced petitioner to a concurrent term of not less than one year nor more than five years confinement. Petitioner's conviction for robbery merged with the second degree murder conviction for sentencing purposes. Notes of Testimony (N.T.) 2/15/2008 at 26-28.

evidence motion; on that date, this Court denied petitioner's post-sentence motions. On August 4, 2008, petitioner filed a timely notice of appeal. The Superior Court affirmed petitioner's judgments of sentence on November 25, 2009.[6] Petitioner filed for *allocatur*, which our Supreme Court denied on May 4, 2010.[7]

Petitioner filed a timely *pro se* petition pursuant to the Post-Conviction Relief Act (PCRA)[8] on May 27, 2010. Barbara McDermott, Esquire was appointed to represent Mr. David, and filed an amended petition on his behalf on November 18, 2011. Ms. McDermott later ascended to the bench; J. Matthew Wolfe, Esquire was appointed in her stead. On February 10, 2012, Mr. Wolfe filed an amended petition. However, on September 7, 2012, Mr. David requested to proceed *pro se*. On October 5, 2012, this Court conducted a Grazier[9] hearing, during which time petitioner equivocated. After requesting to proceed *pro se* again on December 24, 2012, this Court conducted a second Grazier hearing on January 31, 2013. On that date, petitioner knowingly, intelligently and voluntarily waived his right to counsel and this Court permitted petitioner to proceed *pro se*. On December 26, 2012, petitioner filed a motion to supplement his amended petition.

On February 5, 2013, petitioner filed a motion for discovery, requesting "all documents and materials in connection with the telephone that was tooken [sic] from his home on the night he was arrested." On February 26, 2013, the Commonwealth responded to petitioner's discovery motion, enclosing a copy of a report pertaining to the information obtained from one cell phone recovered from petitioner's home. On March 5, 2013, petitioner replied to the Commonwealth's response, asserting that there was another report for a different cell phone, which had also been taken from his home, and which potentially contained exculpatory information. The Commonwealth filed a

---

[6] Commonwealth v. David, No. 2309 EDA 2008, slip op. (Pa.Super., Nov. 25, 2009) (memorandum opinion).

[7] Commonwealth v. David, No. 718 EAL 2009, slip op. (Pa., May 4, 2010) (memorandum opinion).

[8] 42 Pa.C.S. §§ 9541-9546.

[9] Commonwealth v. Grazier, 713 A.2d 88 (Pa. 1998).

motion to dismiss on March 15, 2013. On April 2, 2013, petitioner filed a response to the

Commonwealth's motion to dismiss.

On June 4, 2013, this Court conducted a hearing pursuant to Pa.R.Crim.P. 908 (908 Hearing)

only as to petitioner's discovery motion. On August 19, 2013, petitioner filed a final memorandum

of law. On October 3, 2013, after considering the pleadings of the parties, and conducting an

independent review, this Court sent petitioner notice pursuant to Pa.R.Crim.P. 907 (907 Notice) of

its intent to deny petitioner's substantive claims without a hearing. On October 8, 2013, petitioner

responded to this Court's 907 Notice. Consistent with its 907 Notice, this Court denied and

dismissed petitioner's petition on October 25, 2013. This timely appeal followed.

## FACTS[10]

On December 3, 2005, at around 11:10 a.m., Officer Thomas Quinn and Sergeant Michael Colello, of the Philadelphia Police Department, while in their respective patrol cars on the 3100 block of Jasper Street, heard a loud noise which sounded like a gunshot. Notes of Testimony (N.T.) 2/5/08 at 108-31; N.T. 2/6/2008 at 15-17. Both officers then drove northbound on Jasper towards the 1800 block of Clementine Street, when a call regarding a shooting came over police radio. N.T. 2/5/08 at 114. As he reached the intersection, Officer Quinn was flagged down by a woman who told him that there was a man laying on the sidewalk on South Clementine Street. Id. at 119-20. Officer Quinn found Craig Clayton [Clayton] on the ground; he was non-responsive and was having a hard time breathing. Medics pronounced him dead at the scene. Id. at 123. Sergeant Colello immediately attempted to gather information and question witnesses as to what they may have seen that morning. N.T. 2/6/08 at 21. One witness relayed that a Black male wearing a green jacket, green pants, and carrying a black trash bag had run towards Kensington Avenue. Id. at 22, 24-25.

On the previous night, December 2, 2005, Hector Caceres, a resident of Clementine Street, had arrived home at approximately 9:30 p.m. N.T. 2/5/08 at 265. As he parked his car, Mr. Caceres noticed two Black men whom he did not recognize. Id. at 266. One of the men stood next to a tree at Stouton and Clementine Streets. Id. He had on a dark, heavy coat and a black hat. Id. The other man stood across the street. Id. An hour later, at approximately 10:30 p.m., Monica Yancey, another resident of Clementine Street, left her home. N.T. 2/7/08 at 204. She was on the way to the store when she noticed [these] two men . . . standing on the corner of Stouton and Clementine. Id. at 204-05. Ms. Yancey felt uneasy and decided to go back inside of her house rather than go to the store. Id. at 205.

---

[10] This Court recites the facts as presented in its November 25, 2009 opinion pursuant to Pa.R.A.P. 1925(a).

3

At 10:40 the next morning, December 3, 2005, Mr. Caceres was on his way to the corner store when he noticed that the same men he had seen the night before were standing in the same locations. N.T. 2/5/08 at 267-68, 273, 277-79. That same morning, Brandy Saunders was walking towards her mother's house on Clementine Street when she noticed two Black men at the intersection of Ruth and Clementine. N.T. 2/6/08 at 130-31, 133. As she walked past them, the shorter of the two called out to her while the taller man spoke on a cell phone. Id. at 134, 136. She overheard the taller man on the phone say "it's about to happen in five minutes." Id. at 134-36. Ms. Saunders then entered her mother's home and approximately five minutes later she heard a loud noise that sounded like a gunshot. Id. at 138-39.

Around the same time, Ms. Yancey heard a popping sound which she believed to be a car window breaking. N.T. 2/7/08 at 216-17. She quickly went outside to investigate the noise, and observed [petitioner] and [his co-defendant Jones] across the street. Id. at 216-19. She yelled to them that she was going to call the police and Jones ran towards Kensington Avenue while [petitioner] ran towards Jasper Street. Id. at 225-26. Ms. Yancey noticed that, as he ran, Jones carried a black garbage bag underneath his arm. Id. at 229. A neighbor then informed Ms. Yancey that there was a body on the ground. Id. at 236.

B.O., a resident of Jasper Street, was retrieving clothing from her aunt's minivan on Clementine Street when she heard people arguing. N.T. 2/5/08 at 216-22. She turned and saw three men – two were arguing and the third was talking on his cell phone. Id. at 222-24. She then realized that the taller of the two quarreling men was pointing a gun toward the other man's face as he backed away with his hands up. Id. at 224-25. B.O. saw the taller man shoot him, and she began running back towards her aunt's house. Id. at 225-29. As she ran, she saw the taller man running in her direction. Id. at 227-29. She entered her aunt's home, but did not observe in what direction the man then ran. Id. at 232.

At the scene, officers recovered from [Clayton's] person the following items: jewelry, money, a wallet, business cards, and a notebook. The notebook was opened to a page that contained: the address of 1833 Clementine; two telephone numbers, (215) 888-2400 and (267) 262-5094; the name "Mike"; and a notation which said "Size 12 Tims." N.T. 2/6/08 at 74-75.

In the early evening of December 3, 2005, the police located [Clayton's] vehicle on the corner of Clementine and Jasper Streets. Id. at 263-66. Detective John Cahill found [Clayton's] cell phone in the vehicle, along with a large quantity of sporting goods. N.T. 2/7/08 at 117-18. An investigation into [Clayton's] cell phone records revealed that the last incoming call on [Clayton's] cell phone was at 10:49 a.m. on December 3, 2005, from (215) 888-2400; the last outgoing call was at 11:04 a.m. to that same number. N.T. 2/12/08 at 214, 216. Detective Francis Kerrigan subpoenaed subscriber information and call records for (215) 888-2400 from Sprint Nextel for the period from December 2 to December 5, 2005. N.T. 2/6/08 at 223-24. This cell phone was found to be registered to Dolores Johnson, co-defendant Jones' grandmother. Id. at 226; N.T. 2/7/08 at 112. The phone records revealed that the last call between Dolores Johnson's cell phone and [Clayton's] cell phone occurred on December 3, 2005 at 11:04 a.m. N.T. 2/6/08 at 237.

On December 20, 2005, Ms. Yancey identified [petitioner] in a photo array. N.T. 2/7/08 at 243. On December 22, 2005, at approximately 6:15 a.m., an arrest and search warrant were executed and [petitioner] was arrested at his residence at 4649 Tackawanna Street, in Philadelphia. N.T. 2/7/08 at 133-34; N.T. 2/12/08 at 180.

## LEGAL ANALYSIS

In order to be eligible for PCRA relief, petitioner must prove, by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the following circumstances:

(i) A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent.

(iv) The improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.

(v) Deleted.

(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.

(vii) The imposition of a sentence greater than the lawful maximum.

(viii) A proceeding in a tribunal without jurisdiction.

42 Pa.C.S. § 9543.

In order to obtain relief based on a claim of ineffective assistance of counsel, a petitioner must establish:

(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) petitioner suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.

Commonwealth v. Barndt, 74 A.3d 185, 192 (Pa.Super. 2013), *citing* Commonwealth v. Pierce, 527 A.2d 973, 975 (Pa. 1987).

Trial counsel is presumed to have been effective; petitioner bears the burden to prove each of the aforementioned three factors by a preponderance of the evidence. Id., *citing* Commonwealth v. Rathfon, 899 A.2d 365, 369 (Pa.Super. 2006).

Petitioner raised five claims of ineffective assistance of counsel.

**1. Trial counsel was ineffective for failing to investigate phone records relevant in the trial; the PCRA Court erred in dismissing this claim without a hearing.[11]**

Petitioner first claims that trial counsel was ineffective for failing to obtain information from two cell phones which had been recovered from his home. Petitioner contends that, had his attorney obtained records pertaining to petitioner's phone, he could have presented evidence contradicting the Commonwealth's theory that petitioner used Jones' phone to speak to Clayton in the hours leading up to the crime. This claim fails, as petitioner failed to establish that records for his phone existed at the time of trial and could have been presented to the jury.

Prior to trial, Detective Christopher Tankelewicz received three cell phones from Detective John Cahill, with instructions to examine the contents of Clayton's phone only.[12] N.T. 6/14/2013 at 13-14. Detective Tankelewicz attempted to charge all three phones to determine which was assigned Clayton's number. Two of the phones turned on; the third phone was inoperable. Id. at 16; N.T. 2/12/2008 at 223-24. On June 14, 2013, this Court granted petitioner's motion for discovery as to the two cell phones which had not been examined at the time of trial; this Court

---

[11] This Court conducted an evidentiary hearing pursuant to Pa.R.Crim.P. 908 (908 Hearing) to determine whether petitioner's purported phone records existed at the time of trial. Thus, petitioner's claim that this Court failed to hold an evidentiary hearing concerning the substance of this claim is baseless.

[12] The number associated with Clayton's phone was (215) 681-1794. N.T. 6/4/2013 at 14.

instructed Detective Tankelewicz to locate those phones and to examine the phones for all calls and messages, sent and received, within a 72-hour period of the crime. N.T. 6/14/2013 at 78-79.

On July 9, 2013, the Commonwealth wrote to this Court and to petitioner concerning the results of Detective Tankelewicz's efforts to test the phones: the Commonwealth represented that the phone which had been inoperable at the time of trial was still inoperable. Detective Tankelewicz was able to analyze the other phone, which corresponded to the number of the phone that petitioner said belonged to him.[13] However, the information available on petitioner's phone did not date back to December 3, 2005 – the date of the crime. Subsequently, the Commonwealth provided to this Court and to petitioner Detective Tankelewicz's complete report concerning his examination of the two cell phones within the control of the Commonwealth, which confirmed that the information petitioner sought did not exist.

Trial counsel cannot be deemed ineffective for failing to present information which did not exist. Commonwealth v. Speight, 677 A.2d 317, 323 (Pa. 1996), *abrogated on other grounds by* Commonwealth v. Freeman, 827 A.2d 385 (Pa. 2003); see also Commonwealth v. Williams, 602 A.2d 350, 357-58 (Pa.Super. 1992) ("Furthermore, appellant's failure to establish that the photographs exist is sufficient grounds to deny his claim [that trial counsel was ineffective for failing to place the photographs into evidence].").

As petitioner could not show that his phone records from December 3, 2005 existed, he failed to bear his burden to establish that trial counsel was ineffective for failing to place those records into evidence. Accordingly, the claim failed for lack of arguable merit and was properly denied.

---

[13] The number associated with petitioner's phone was (267) 259-9314. N.T. 6/4/2013 at 78.

2. Trial counsel was ineffective for failing to call Kelly O'Brien and/or Detective Gregory Santamala to impeach Briana O'Brien. Additionally, trial counsel was ineffective for failing to impeach Briana O'Brien with her prior inconsistent statement; the PCRA Court erred in dismissing this claim without a hearing.

Petitioner's second claim is that trial counsel was ineffective for failing to call Kelly O'Brien (Kelly) and Detective Gregory Santamala to impeach Briana O'Brien's (Briana) trial testimony; additionally, trial counsel was ineffective for failing to impeach Briana with her prior statement. Prior to trial, Briana gave a statement to Detective Santamala in the presence of her aunt, Kelly. Petitioner argues that Briana testified inconsistently with her statement, identifying petitioner as the shooter despite having failed to do so when she spoke with Detective Santamala. Therefore, petitioner contends that trial counsel was ineffective for failing to impeach Briana. As Briana's trial testimony was entirely consistent with her statement, any attempt at impeachment would have been inadmissible. Accordingly, trial counsel was not ineffective for failing to introduce inadmissible evidence. This claim fails.

A witness may be impeached with extrinsic evidence of a prior inconsistent statement, as long as four requirements are satisfied, one of which is that the prior statement "conflicts with the testimony of the witness at trial." Pa.R.E. 613(b); Commonwealth v. Brown, 448 A.2d 1097, 1103 (Pa.Super. 1982). "Mere dissimilarities or omissions in prior statements . . . do not suffice as impeaching evidence; the dissimilarities or omissions must be substantial enough to cast doubt on a witness' testimony to be admissible as prior inconsistent statements." McManamon v. Washko, 906 A.2d 1259, 1268 (Pa.Super. 2006).

In her original statement, Briana stated that she saw three men around the time of the shooting. She described the shooter as follows:

> He had a green color jacket. When I saw him I could only see from the side. I couldn't tell if he was black, white. The other guy that was on the cell phone was a B/M, kind of tall and big, wearing black.

Briana O'Brien Statement, at 2. (Attached as Attachment A).

8

At trial, Briana testified that the shooter was taller than the male talking on a cell phone. N.T. 2/5/2008 at 224-25. When asked whether she could determine the race of the shooter, she responded, "No. I only knew that the guy that was on the phone was African-American." Id. at 228. Finally, Briana was asked about the shooter's clothing. She said, "He was wearing a green sweatshirt." Id. at 232.

Briana's statement at trial that the shooter was taller than the male on the phone was not inconsistent with her original statement. Detective Santamala did not ask Briana about the relative heights of the two men, and she did not offer such a comment. In fact, when Briana testified about subjects which she had previously addressed, her testimony was entirely consistent: in her original statement, Briana said that she was not sure of the shooter's race, but she was able to see that he wore a green sweatshirt. See Attachment A. In that statement, she also said that the man on the cell phone was a black male. Id. At trial, Briana testified to the exact same facts. N.T. 2/5/2008 at 224-32.

Petitioner cannot demonstrate that Briana's trial testimony was inconsistent with her original statement.[14] Thus, extrinsic evidence would not been admissible for impeachment purposes. Trial counsel will not be deemed ineffective for failing to present inadmissible evidence. See Commonwealth v. McLaurin, 45 A.3d 1131, 1139 (Pa.Super. 2012) ("We will not find counsel ineffective for refraining to present inadmissible evidence."). Accordingly, this claim failed and was properly denied without a hearing. Comment to Pa.R.Crim.P. 907 ("If . . . the facts alleged would

---

[14] In petitioner's response to this Court's 907 Notice, he stated that Briana's trial testimony was inconsistent with her original statement concerning the directions in which petitioner and Jones fled the scene. 907 Response, 10/8/2013 at 6. Petitioner is mistaken; Briana's trial testimony concerning this fact was consistent with her statement. In her statement, Briana said that the shooter ran in her direction. See Attachment A. Likewise, at trial, she stated that the shooter was taller than the other man on the phone. N.T. 2/5/2008 at 224-25. She stated that the "taller man" ran in her direction. Id. at 227.

9

not, even if proven, entitle the defendant to relief . . . the judge may dismiss the petition as provided herein.").

**3. Appellate counsel was ineffective for failing to properly challenge the sufficiency of petitioner's conviction for murder of the second degree; the PCRA Court erred in dismissing this claim without a hearing.**

Petitioner's next claim is that appellate counsel failed to "properly" challenge the sufficiency of petitioner's conviction for murder of the second degree. Petitioner alleges that the Commonwealth failed to establish that Clayton's death was "carried out in the furtherance of the design to commit the robbery." Motion to Supplement Petition Again, 12/26/2012 at 1. As the evidence presented at trial was sufficient to establish that Clayton was shot and killed in order to accomplish the robbery, this claim fails.

"A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S. § 2502(b). "The statute defining second degree murder does not require that a homicide be foreseeable; rather it is only necessary that the accused engaged in conduct as a principal or an accomplice in the perpetration of a felony." Commonwealth v. Lambert, 795 A.2d 1010, 1023 (Pa.Super. 2002).

> Whether evidence sufficiently indicates that a killing was in furtherance of a predicate felony can be a difficult question. The question of whether the killing was in furtherance of the conspiracy is a question of proof for the jury to resolve. It does not matter whether the appellant anticipated that the victim would be killed in furtherance of the conspiracy. Rather, the fact finder determines whether the appellant knew or should have known that the possibility of death accompanied a dangerous undertaking.

Id.

Taken as a whole and viewed in the light most favorable to the Commonwealth, the evidence presented at trial was sufficient to establish that petitioner and Jones concocted a plan to lure Clayton to a quiet area of the city under the pretense that petitioner would purchase a pair of Timberland boots. On the night of December 2, 2005, both petitioner and Jones were spotted

10

scoping the area. The next morning, Brandy Saunders overheard one of those two men say, "It's about to happen in five minutes." Shortly thereafter, once a third person arrived in the area, Briana witnessed the pair robbing the newcomer, Clayton. As Clayton backed away from petitioner and Jones, Clayton raised his hands in the air; he did not pose a threat. Nonetheless, petitioner shot him, enabling Jones to take a package and flee. The Commonwealth proffered sufficient evidence to establish that petitioner "should have known that the possibility of death accompanied" when he opened fire on Clayton in an effort to facilitate the robbery. The argument that the evidence did not support a finding that this shooting was committed "in furtherance of" a robbery lacks merit. Appellate counsel cannot be deemed ineffective for failing to raise a meritless claim. See Commonwealth v. Tedford, 960 A.2d 1, 42 (Pa. 2008). This claim was properly denied.

**4. Appellate counsel was ineffective for failing to argue that the due process clause was violated on two different bases: (a) by virtue of the fact that petitioner was convicted of murder of the second degree based upon insufficient evidence, and (b) by virtue of the fact that an "unreliable" business record was admitted against petitioner.[15]**

Petitioner claims that appellate counsel was ineffective for failing to argue that the due process clause was violated (a) because petitioner was convicted of murder of the second degree without sufficient evidence. In conjunction with this claim, petitioner refers to Jackson v. Virginia, 443 U.S. 307 (1979), as authority for the notion that the prosecution must prove, beyond a reasonable doubt, every element of the charged offense. Motion to Supplement Amended Petition Again, 12/26/2012, at 2. As discussed *supra*, the evidence presented at trial was sufficient to sustain a conviction for murder of the second degree. Accordingly, appellate counsel was not ineffective for

---

[15] In his Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b) (1925(b) Statement), petitioner stated that appellate counsel was ineffective "for failure to raise a violation of the Due Process clause of the U.S. Constitution as well as the PA. state [sic] Constitution." In his 1925(b) Statement, petitioner did not provide any additional details concerning the purported due process clause violation. As petitioner argued in his pleadings that the due process clause was violated by virtue of the fact that petitioner was convicted of murder of the second degree on insufficient evidence, this Court interprets petitioner's 1925(b) Statement as raising that claim on appeal.

11

failing to argue that the Commonwealth did not prove each element of the offense beyond a reasonable doubt. This claim fails.

Additionally, petitioner contends that appellate counsel was ineffective for failing to argue (b) that the admission of the note found in Clayton's pocket violated the due process clause because it was "unreliable" hearsay. Appellate counsel raised this exact claim on appeal.

> Judge Sarmina allowed the note as a business record exception . . . . Clearly, that was a stretch because this rough note did not fit the reliability of regularly maintained records. This apparently was a brief note written at some point to remind someone of a shoe size and some addresses and phone numbers and a first name.

Brief to the Superior Court, 4/22/2009, at 64.

As there is no merit to petitioner's claim that appellate counsel failed to raise a claim when he actually did, this claim was properly dismissed.

## 5. The PCRA Court erred in dismissing a claim of newly-discovered evidence in the form of witness Jeffrey Lewis.

Petitioner's last claim is that Jeffrey Lewis (Lewis) has provided after-discovered evidence, which would have changed the outcome of the trial if it had been introduced. On January 28, 2010, Lewis signed an affidavit, in which he stated:

> I have personal knowledge that Michael David was not involved in anyway [sic] or associated at anytime with Christopher Jones in the murder that he is convicted for. I am a close friend of C. Jones and his family. I knew about the issues his family had concerning Christopher following behind his stepfather. I also indirectly knew what Michael David looked like. And I know for a fact that he wasn't involved with Chris or Kev [sic] before, during or after the murder. From my knowledge the other guy that was with Chris was dead before Chris was arrested. Either way I know Michael David wasn't involved in no way shape or form. I still have the same number, I visited Chris, I have a very recent letter from Christopher Jones also. Michael David is innocent.

Affidavit of Jeffrey Lewis, 1/28/2010.

In order to succeed on a claim of after-discovered evidence, petitioner must show, by a preponderance of the evidence, that each of the four following factors has been met. Commonwealth v. Padillas, 997 A.2d 356, 363 (Pa.Super. 2010). The evidence:

12

(1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

Commonwealth v. Foreman, 55 A.3d 532, 537 (Pa.Super. 2012).

Where a petitioner has not "explained why this evidence could not have been obtained at or prior to trial through reasonable diligence," his claim of after-discovered evidence fails. Commonwealth v. Smith, 17 A.3d 873, 890 (Pa. 2011). "A defendant cannot claim he has discovered new evidence simply because he had not been expressly told of that evidence." Padillas, 997 A.2d at 364.

In its 907 Notice, this Court explained that petitioner failed to demonstrate that he could not have obtained the information contained within Lewis' affidavit earlier through the exercise of reasonable diligence. In response, petitioner stated, "It was not until Jeffrey Lewis was placed at the same jail as the petitioner that this evidence could be discovered." 907 Response, 10/8/2013 at 13. Throughout his pleadings, petitioner offered no reason to believe that he pursued information from Lewis at any point in time before Lewis approached him. Without having demonstrated that he attempted to learn of the information contained within Lewis's affidavit, petitioner failed to show that he employed "reasonable diligence" in bringing this claim.[16] Accordingly, this claim failed and was properly dismissed.

---

[16] Furthermore, even if petitioner had exercised "reasonable diligence" in obtaining information from Lewis, this claim would still fail, as the contents of Lewis's affidavit would not have changed the outcome at trial. Without explaining his basis of knowledge, Lewis concluded that petitioner is innocent of the instant offense. Lewis offered no details of petitioner's whereabouts during the crime or the crime itself which could have supported a finding that Lewis possessed personal knowledge. Lewis's bare assertion that petitioner "wasn't involved in no way shape or form" would not even have been admissible without some showing that he possessed personal knowledge of pertinent events. The contents of Lewis's affidavit would not have changed the outcome at trial.

13

For the foregoing reasons, petitioner is not entitled to any relief under the PCRA, this Court's denial and dismissal of his petition should be affirmed.

BY THE COURT:

M. TERESA SARMINA     J.