**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Daniel Thuc GARANG, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 4, 2010.
Filed Nov. 18, 2010.

---

Daniel T. Garang, appellant, pro se.

Robert A. Sambroak, Asst. Dist. Atty., for Com., appellee.

BEFORE: STEVENS, BOWES, and FITZGERALD,* JJ.

## OPINION BY STEVENS, J.:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Erie County on October 23, 2009, at which time Appellant Daniel Thuc Garang (hereinafter "Appellant") was sentenced to an aggregate term of thirteen (13) years nine (9) months to thirty-two (32) years in prison. Appellant's counsel also has filed a petition to withdraw and a brief under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); *Commonwealth v. McClendon*, 495 Pa. 467, 434 A.2d 1185 (1981); *Commonwealth v. McFarland*, 386 Pa.Super. 91, 562 A.2d 369 (1989); and *Commonwealth v. Wilson*, 396 Pa.Super. 296, 578 A.2d 523 (1990). Upon a review of the record, we grant counsel's petition and affirm the judgment of sentence.

Following a jury trial, Appellant was found guilty of Attempted Homicide,[1] Discharge of Firearm into Occupied Structure,[2] Possession of Instruments of Crime,[3] three counts of Recklessly Endangering

---

* Former Justice specially assigned to the Superior Court.

1. 18 Pa.C.S.A. § 901(a); 18 Pa.C.S.A. § 2501(a).

2. 18 Pa.C.S.A. § 2707.1(a).

3. 18 Pa.C.S.A. § 907(b).

Another Person,[4] and Aggravated Assault.[5] At trial, the victim testified that on November 1, 2008, his children informed him they had been involved in a fight earlier in the day. N.T., 9/14/09, at 29. Though the victim did not see the fight, it resulted in three of his four children being taken to the hospital by ambulance. *Id.* At trial, the victim stated he was "one hundred-one million percent" sure the man he saw at his home that evening was Appellant. He explained that Appellant along with several others came to his home and after exchanging a short greeting with him, drew a handgun. *Id.* at 33. When Appellant pulled out the gun, the victim explained he shut the door and lay on the floor. *Id.* at 34. Appellant fired two shots through the door the first of which penetrated the door at the level of the victim's head, and the second struck where his midsection would have been were he still standing. *Id.* at 33–34. The victim's brother and daughter, who had been standing behind him, crawled toward the basement. *Id.* at 34. The victim identified Appellant's photo from an array a few days later. *Id.* at 36.

The victim also revealed that his brother and children told him Appellant warned the children after the fight he would be back. *Id.* at 42, 45. The victim's children further told him Appellant had stolen their cell phone before the altercation and refused to return it unless they paid him fifty ($50.00) dollars. *Id.* at 46.

In addition, Detective John Holmes testified that as part of his involvement of the investigation of the instant matter he had spoken with the victim and members of his family at the home after which he compiled a photographic lineup and showed it to the victim two (2) days later. *Id.* at 51–53. Detective Holmes testified that after examining the photos for "a few seconds" the victim pointed to the photo of Appellant and said "a hundred percent, that's him." *Id.* at 53. The victim then drew an arrow to Appellant's photo and indicated the date and time along with his signature. *Id.* at 53–54. Appellant's brother and daughter testified regarding the events surrounding the shooting, but neither was able to see the shooter clearly. *Id.* at 82–94.

Mr. Malual Abol testified on behalf of Appellant and explained that he was Appellant's friend and knew Appellant was not the shooter. He acknowledged he and Appellant were present at the scene. Mr. Abol admitted on cross-examination that this was the first time he spoke about Appellant's innocence, though Appellant had been facing charges for almost a year. N.T., 9/15/09, at 9–17. He also explained only Appellant had been in a fight involving the victim's children earlier that day, and that he, Appellant and three others just went to the victim's home that evening without anyone suggesting they do so. *Id.* at 18–20. Appellant's brother, Deng Garang, also testified that people "sometimes" tell him he resembles Appellant. *Id.* at 23.

Following trial but before sentencing, Appellant filed a Motion to Dismiss prior to Sentencing Based Upon Newly Discovered Violation of Pa.R.Crim.P. 573 wherein he averred his charges should be dismissed in light of the Commonwealth's failure to turn over a victim impact statement it had received on March 17, 2009, which contained statements allegedly favorable to Appellant. Appellant also filed a Motion for Reconsideration of Sentence on November 2, 2009. In its Memorandum filed December 14, 2009, the trial court denied both Motions.

Appellant filed a timely notice of appeal on January 13, 2010, and thereafter in an Order filed on January 14, 2010, the trial

---

4. 18 Pa.C.S.A. § 2705.

5. 18 Pa.C.S.A. § 2702(a)(4).

court required Appellant to file a statement of matters complained of on appeal pursuant to Pa.R.A.P.1925(b). On February 5, 2010, Appellant filed his Motion to Extend the Time Period for Filing 1925(b) Statement and on February 8, 2010, the trial court granted Appellant's motion and specified that Appellant would have twenty (20) days after receiving the transcripts in which to file and serve the Statement. Appellant did not file the same until April 1, 2010. In an Order filed on March 11, 2010, the trial court deemed any issue Appellant may raise on appeal to be waived in light of his failure to file and serve the Statement in a timely manner.

■ On July 15, 2010, Appellant's counsel filed her Petition to Withdraw as Counsel with this Court. Along with her petition, counsel included a copy of a letter addressed to Appellant and dated July 13, 2010, and a Brief for Appellant. "When presented with an *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw." *Commonwealth v. Daniels,* 999 A.2d 590, 593 (Pa.Super.2010) citing *Commonwealth v. Goodwin,* 928 A.2d 287, 290 (Pa.Super.2007) (*en banc*) (citation omitted).

Recently, our Supreme Court discussed the three requirements that counsel must meet before he or she is permitted to withdraw from representation as follows:

First, counsel must petition the court for leave to withdraw and state that after making a conscientious examination of the record, he has determined that the appeal is frivolous; second, he must file a brief referring to any issues in the record of arguable merit; and third, he must furnish a copy of the brief to the defendant and advise him of his right to retain new counsel or to himself raise any additional points he deems worthy of the Superior Court's attention. Super. Ct. Op. at 2 (citing *Commonwealth v. Ferguson,* 761 A.2d 613, 616 (Pa.Super.2000)).

*Commonwealth v. Santiago,* 602 Pa. 159, 978 A.2d 349, 351 (2009).[6]

■ In her Petition for Leave to Withdraw as Counsel and *Anders* brief, Appellant's counsel reveals that she has made a conscientious examination of the record and found that there are no non-frivolous issues to be raised on appeal. The brief itself, moreover, does not resemble a no-merit letter or *amicus curiae* brief as it sets forth the issues in neutral fashion, supplies governing authority on the issues, and offers no argument against Appellant's interest. Finally, counsel attached to her petition as "Exhibit A" a copy of the letter sent to Appellant wherein she advised him that she had made a conscientious examination of the record, found no issues of arguable merit, and that he had a right to retain new counsel, proceed *pro se,* or raise any additional issues that he deems worthy of the court's attention. Therefore, counsel has complied with the procedural requirements of *Anders, McClendon and Santiago, supra.* As counsel has complied with all of the requirements set forth above, we now proceed to an independent review of the record and the issues counsel

---

**6.** We note that the holding in *Santiago* altered the prior requirements for withdrawal under *Anders* as *Santiago* now requires counsel to provide the reasons for concluding the appeal is frivolous; however, our Supreme Court explained that the requirements enumerated in *Santiago* would apply only to cases wherein the briefing notice was issued after August 25, 2009, the date upon which *Santiago* was filed. Since the briefing notice for the within matter was issued after August 25, 2009, the *Anders* requirement set forth in *Santiago* that counsel must state her/his reasons for concluding the appeal is frivolous is required. We also note that Appellant has not responded to counsel's petition to withdraw.

stated arguably support an appeal. *Commonwealth v. Daniels*, 999 A.2d 590, 594 (Pa.Super.2010).

In her *Anders* brief, counsel provides the following Statement of the Questions Presented for our Review.

> Whether the [c]ourt erred or abused its discretion by refusing to dismiss the charges pursuant to Article II of the U.S. Constitution when the Commonwealth failed to seek permission from the President before charging Appellant?
>
> Whether the [c]ourt erred or abused its discretion by failing to dismiss the charges based upon judicial economy in consideration of Appellant's previously imposed lengthy sentence at another docket and certain deportation after release?
>
> Whether there was sufficient evidence to support Appellant's convictions?
>
> Whether the [c]ourt erred or abused its discretion by failing to instruct the jury that Appellant could not be convicted of conspiracy as he was not charged with conspiracy despite the prosecutor's argument to the contrary?
>
> Whether the trial court erred or abused its discretion when it failed to grant Appellant's motion to dismiss prior to sentencing based upon the Commonwealth's failure to provide in discovery an exculpatory statement made by a victim concerning his identification of Appellant.

Brief for Appellant at 4.

In its Opinion filed pursuant to Pa. R.A.P.1925(a), the trial court explains that the final transcript had been filed by the Court Reporter's Office on February 18, 2010, and when it had not received Appellant's statement of matters complained of on appeal by March 11, 2010, it issued an Order declaring all appealable issues waived and directing the Clerk of Courts to submit the record to this Court; however, the trial court acknowledges that Appellant's trial counsel filed and served his statement of matters complained of on appeal on April 1, 2010, and averred therein that she had not received the transcripts until March 12, 2010. The trial court ultimately explained it would consider the merits of the issues "[i]n lieu of holding a possible remand hearing as to when counsel received the transcripts." [7]

In her *Anders* brief, appellate counsel admits the Statement of Matters Complained of Pursuant to Pa.R.A.P.1925(b) was filed several days late but reasons that because the trial court issued a responsive opinion, remand is not necessary. Brief for Appellant at 11. We disagree the statement had been filed several days late as Pa.R.A.P.1922(a) entitled Transcription of Notes of Testimony provides the following:

> **(a) General rule.** Upon receipt of the order for transcript and any required deposit to secure the payment of transcript fees the official court reporter shall proceed to have his notes transcribed, and not later than 14 days after receipt of such order and any required deposit shall lodge the transcript (**with proof of service of notice of such lodgment on all parties to the matter**) with the clerk of the trial court. Such notice by the court reporter shall state that if

---

**7.** In its Opinion, the trial court discusses only the sufficiency of the evidence argument, failure to instruct the jury claim, and the failure to grant post-trial motion issue, though Appellant raises five (5) issues in his Pa.R.A.P. 1925(b) statement. In addition, in lieu of filing a brief, the Commonwealth submitted a letter to the Deputy Prothonotary of this Court wherein it indicated its position that a responsive brief was not necessary. The Commonwealth does not discuss the waiver issue in its correspondence.

no objections are made to the text of the transcript within five days after such notice, the transcript will become a part of the record. If objections are made the difference shall be submitted to and settled by the trial court. The trial court or the appellate court may on application or upon its own motion shorten the time prescribed in this subdivision.

Pa.R.A.P.1922(a) (emphasis added).

Upon our review of the record, we were unable to ascertain a proof of service of notice of the lodgment of the transcripts on the parties. The only indication of service upon Appellant's counsel after the transcripts had been filed on February 18, 2010, was the trial court's Opinion and Order of March 11, 2010, and a notation on the docket for March 12, 2010, which reads "Copy of List of Documents and Docket Sheet sent to Attorney of Record and District Attorney dated March 12, 2010." Appellant's counsel was served via attorney mailbox. As such, we will consider the merits of the issues raised in counsel's *Anders* brief.

■ Appellant first claims the trial court should have dismissed the charges brought against him because the Commonwealth failed to seek permission from the President of the United States before charging him. In his Omnibus Pre–Trial Motion filed on July 20, 2009, Appellant relates that he is a political refugee directly related to Dr. John Garang, the leader of the Sudan People's Liberation Army, and that his own father ran for President of Sudan which caused his family to flee for its safety. Appellant concluded, *inter alia*, that his case must be dismissed because the United States has a vital interest in the political and economic issues of Sudan, that Sudan remains in a state of crisis, that Article II of the Constitution gives the President of the United States the power and responsibility to conduct foreign affairs and policy, and it was therefore the duty of the prosecution to seek permission from the President before filing charges against Appellant. *See* Defendant's Omnibus Pre–Trial Motion at 1–6.

First, while the trial court entered a Notice on July 30, 2009, scheduling a hearing on Appellant's Omnibus Pre–Trial Motion for August 17, 2009, and thereafter entered an Order on August 24, 2009, after hearing oral argument on the matter, the transcript of that proceeding has not been transcribed for our review; as such, it is not clear from the record whether, in fact, the omnibus pretrial oral argument had been transcribed and what specific arguments were set forth therein. Notwithstanding, the fact remains that while Appellant may have political ties to Sudan and may have endured hardship there, and while the United States may have political and/or economic interests in Sudan, the Appellant was charged with and convicted of attempted homicide and related crimes against a citizen of this Commonwealth. We are aware of no case authority which under the fact alleged herein prohibits the Commonwealth from prosecuting such individuals without the permission of the President of the United States because of federal public policy issues. Indeed, Appellant previously had been tried and convicted in the Commonwealth as is evinced in his own acknowledgement made in his Pa.R.A.P.1925(b) statement that he was "already serving a significant term of incarceration and facing deportation to Sudan." As such, this claim fails.

■ Appellant next maintains the charges against him should have been dismissed for the sake of judicial economy as he had received a lengthy sentence at another docket and after serving it faces certain deportation. When discussing this argument in its Court Order of August 25, 2009, the trial court considered the testi-

mony of Appellant's father, General Deng, concerning the violence in which Appellant was raised in time of war in Southern Sudan which it explained aided in its understanding of Appellant. The trial court also acknowledged Appellant's immediate deportation would relieve the Commonwealth of the burden of housing him and result in Appellant's return to a familiar society; nevertheless, the trial court also noted "there is an interest in justice and the justice of the Commonwealth of Pennsylvania and its citizens must be met" and that it "is without the legal power and jurisdiction to grant the request [as] [i]ssues of deportation and relationships with foreign countries and their leadership are solely within the jurisdiction of the Federal Government." We agree with these observations.

Moreover, each time an individual has been convicted of crimes and sentenced to prison terms the taxpayers of this Commonwealth will, unfortunately, incur costs. It is inapposite to the instant matter that Appellant was serving a prior sentence and will be deported as a result thereof when he was convicted and legally sentenced for crimes he committed. As such, Appellant's claim his charges should be dismissed for the sake of judicial economy is without merit.

■ Appellant further asserts the Commonwealth presented insufficient evidence to support his convictions. Following our independent review of the record, however, we find Appellant has waived this claim. In his Statement of Matters Complained of Pursuant to Pa.R.A.P.1925(b), Appellant enumerated the crimes with which he had been convicted along with their corresponding sentences. He then alleged that the trial court erred as a matter of law and/or abused its discretion as follows:

A. It is averred that the [t]rial [c]ourt erred as a matter of law and/or abused its discretion in failing to dismiss the charges pursuant to Article II of the U.S[.] Constitution, when given the possible consequences of the charges and their impact on foreign relations, it was the duty of the Commonwealth to seek permission from the President of the United States before bringing these charges against [Appellant] and that in effect, the Commonwealth usurped the power reserved to the President by the Constitution of the United States of America.

B. It is averred that the [t]rial [c]ourt erred as a matter of law and/or abused its discretion in failing to dismiss the charges pursuant to the principle of judicial economy when [Appellant] was already serving a significant term of incarceration and facing deportation to Sudan, and another conviction would only serve to delay [Appellant's] deportation and needlessly cost the taxpayers significant sums, likely into the hundreds of thousands of dollars.

C. It is averred that the [t]rial [c]ourt erred as a matter of law and/or abused its discretion in failing to dismiss the charges and in failing to grant [Appellant's] Motion for Judgment of Acquittal, as follows:

1. According to the testimony at trial, the Commonwealth had no physical evidence linking [Appellant] to the allegations and that according to two of the alleged victims, the shooter was one of four people gathered outside.

2. No effort was made to identify or interview the other individuals present, who were also of African descent.

3. Of the three alleged victims, only one, [ ], identified [Appellant] as the

person who fired the shots, but said identification is not credible. . . .

D. It is averred that the [t]rial [c]ourt erred as a matter of law and/or abused its discretion in failing to instruct the jury that [Appellant] could not be convicted of conspiracy because he was not charged with conspiracy when the Commonwealth essentially argued conspiracy.

E. It is averred that the [t]rial [c]ourt erred as a matter of law and/or abused its discretion in failing to grant [Appellant's] post trial Motion when it was discovered just prior to sentencing that the Commonwealth had failed to turn over in discovery an exculpatory statement made by a victim, concerning the identification of [Appellant]. Such statement also directly contradicted the victim's testimony at trial that he had no reason to believe that the shooter could have been anyone else.

*See* Statement of Matters Complained of Pursuant to Pa.R.A.P.1925(b) ¶ 3.

In a recent decision, *Commonwealth v. Williams,* 959 A.2d 1252 (Pa.Super.2008), this Court reiterated that when challenging the sufficiency of the evidence on appeal, the Appellant's 1925 statement must "specify the element or elements upon which the evidence was insufficient" in order to preserve the issue for appeal. *Williams,* 959 A.2d at 1257 (quoting *Commonwealth v. Flores,* 921 A.2d 517, 522–23 (Pa.Super.2007)).

Such specificity is of particular importance in cases where, as here, the Appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt. *Id.,* at 1258 n. 9. Here, Appellant not only failed to specify which elements he was challenging in his 1925 statement, he also failed to specify which convictions he was challenging. While the trial court did address the topic of sufficiency in its opinion, we have held that this is "of no moment to our analysis because we apply Pa.R.A.P.1925(b) in a predictable, uniform fashion, not in a selective manner dependent on an appellee's argument or a trial court's choice to address an unpreserved claim." *Id.* at 1257 (quoting *Flores* at 522–23).

*Commonwealth v. Gibbs,* 981 A.2d 274, 281 (Pa.Super.2009), appeal denied, —— Pa. ——, 3 A.3d 670 (Aug. 5, 2010).

Herein, because the claim in the *Anders* brief that there was evidence to convict Appellant of attempted homicide has no direct counterpart in Appellant's 1925(b) Statement, it is not before us. *See* Pa.R.A.P.1925(b)(4) (vi i)(issues not included in the statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived) and *Commonwealth v. Castillo,* 585 Pa. 395, 403, 888 A.2d 775, 780 (2005) citing *Commonwealth v. Lord,* 553 Pa. 415, 420, 719 A.2d 306, 309 (Pa.1998) (finding "[a]ny issues not raised in a Pa.R.A.P.1925(b) statement will be waived.")[8]

8. Even were we to find Appellant has not waived the issue for failure to raise it in his Pa.R.A.P.1925(b) statement, this claim is mentioned only in connection with the attempted homicide charge in the *Anders* brief. Thus, the failure to include a sufficiency of the evidence argument concerning the other crimes with which Appellant had been convicted would result in waiver as well. Moreover, had Appellant not waived the issue that there had been insufficient evidence presented at trial to convict him of attempted homicide, we would find this claim to be without merit, as the victim unequivocally identified Appellant as the man who fired shots through the door of his home. The jury, as the finder of fact was free to believe the testimony of certain of the Commonwealth's witnesses and

■ Appellant also argues the trial court erred as a matter of law and/or abused its discretion in failing to instruct the jury that [Appellant] could not be convicted of conspiracy because he was not charged with that crime in light of the Commonwealth's "essentially arguing" he was involved in a conspiracy. In his closing, the prosecutor said, *inter alia:* "Who did it? Did this defendant do it? Is there enough to convince you that he did do the shooting and is guilty of all the crimes he's charged with? We believe we have met our burden and we have proved to you that he is the one who did it.... First of all, when the crime occurred, [the victim] was face to face with the shooter.... He has never wavered in his identification of this defendant as the one who was there." N.T., 9/15/09, at 35–36.

At the conclusion of the Commonwealth's closing argument, counsel for Appellant stated the following at sidebar: "Your Honor, given the prosecution's closing, I would ask that you instruct the jury-specifically state to them [Appellant's] not charged with conspiracy, because it seemed that the prosecution was sort of asking them to infer just from the fact he was there, that there is culpability." *Id.* at 41. A discussion between the trial court and Appellant's counsel ensued after which the trial court indicated it did not see a problem with the prosecutor's remarks, to which counsel replied "Okay." *Id.* at 42.

Counsel neither objected on the record at this juncture nor did she object to the instruction prior to deliberations even though the trial court specifically asked counsel whether either had "anything further" both before it provided the jury with concluding instructions and immediately prior to the time the jury retired to deliberate. *Id.* at 55, 59.

■ Trial counsel's failure to object to the jury instruction is fatal to Appellant's claim that the trial court erred in its charge to the jury. In *Commonwealth v. Pressley*, 584 Pa. 624, 887 A.2d 220 (2005) our Supreme Court held that a defendant had failed to preserve for appellate review the trial court's alleged failure to give certain instructions, though such points for charge had been submitted by the defendant and denied by the trial court, where the defendant did not make a specific objection following jury charge and before jury retired to deliberate. Citing Pa. R.Crim.P. 603, and 647(B), the Court reasoned that such a requirement "serves the salutary purpose of affording the court an opportunity to avoid or remediate potential error, thereby eliminating the need for appellate review of an otherwise correctable issue." The Court went on to state that "a judge's perspective concerning a particular point may be altered based upon a party's arguments." *Commonwealth v. Pressley*, 584 Pa. at 630–631, 887 A.2d at 224 (2005) (citations omitted).[9]

---

to disbelieve the testimony of another. *Commonwealth v. Gibbs*, 981 A.2d 274, 282 (Pa.Super.2009) appeal denied, —— Pa. ——, 3 A.3d 670 (Aug. 5, 2010) citing *Commonwealth v. Griscavage*, 512 Pa. 540, 517 A.2d 1256 (1986) (the finder of fact is free to believe all, none, or part of the testimony presented at trial) and *Commonwealth v. Lee*, 956 A.2d 1024, 1029 (Pa.Super.2008) (citation omitted) (The fact-finder is responsible for making credibility determinations, and the finder of fact may believe all, part, or none of a witness's testimony). Herein, the Common-

wealth presented ample evidence to support Appellant's attempted homicide conviction; therefore, his challenge to the sufficiency of the evidence would fail on the merits as well.

9. Even if Appellant's counsel had lodged a specific objection, this claim would still fail. 'The relevant inquiry for this Court when reviewing a trial court's failure to give a jury instruction is whether such charge was warranted by the evidence in the case.' *Commonwealth v. Boyle*, 733 A.2d 633, 639 (Pa.Super.1999) (*citing Commonwealth v.*

In his last issue, Appellant claims the trial court erred in light of the Commonwealth's failure to provide in discovery an exculpatory statement made by a victim concerning his identification of Appellant. Specifically, the Statement provided that: "We still have people telling us to drop the charges, because Daniel's parents are willing to give money, and still have people telling us it wasn't Daniel, they know who it was that shot." *See* Motion to Dismiss Prior to Sentencing, filed October 22, 2009, attachment. In its Memorandum filed on December 14, 2009, the trial court indicated that though the Commonwealth admitted it failed to disclose the information contained in the Victim Impact Statement, such failure did not entitle Appellant to the requested relief because the Commonwealth was not obligated to disclose it. In support of its determination, the trial court reasoned as follows:

> While both Pennsylvania Rule [of] Criminal Procedure 573 and the United States Supreme Court's decision in *Brady v. Maryland[,]* 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215] (1963) make disclosure of certain evidence by the Commonwealth mandatory, neither applies in this case. Most significantly, it was [Appellant']s position at trial that he was present on the victim's porch when he was shot at fairly close range, and that one of the others who was present must have done it. [Appellant] was obviously acquainted with these individuals and did not need anyone else to tell him who

they were or to allow him to investigate their involvement. Further, the information would not be usable for purposes of impeaching the victim's eyewitness testimony, because the statement at issue refers only to what others knew, not the victim, and did not constitute prior inconsistent statements of admissions inconsistent with his position at trial. It is readily apparent that [Appellant] had the information about who was present at the time of the shooting and who was the possible shooter and obviously would have not been in any better position had he known that other unnamed persons also believed that someone else did the shooting. *See Commonwealth v. Palmer*, 814 A.2d 700 (Pa.Super.2002).

Trial Court Memorandum, filed December 14, 2009, at 1–2.

We agree with the trial court's analysis and find no merit to this argument.

Counsel's Petition to Withdraw Granted; Judgment of Sentence Affirmed. Jurisdiction Relinquished.

---

*Mays*, 450 Pa.Super. 188, 675 A.2d 724, 729, *appeal denied*, 546 Pa. 677, 686 A.2d 1309 (1996)); *See also Commonwealth v. Spotz*, 552 Pa. 499, 517, 716 A.2d 580, 589 (1998) (citing *Commonwealth v. Browdie*, 543 Pa. 337, 671 A.2d 668, 673 (1996)) (explaining that a particular jury instruction is only warranted when there is evidence to support such an instruction). *Commonwealth v. Baker*, 963 A.2d 495, 506 (Pa.Super.2008).

Upon our review of the closing arguments and the trial court's subsequent instructions to the jury, we would agree with the trial court's assessment that "[the prosecutor] argued that [Appellant] called the witness who established he was present and therefore he is susceptible to identification." N.T., 9/15/09, at 41.