J-S40036-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| ROBERT MILLER, | : | |
| Appellant | : | No. 238 WDA 2015 |

Appeal from the Judgment of Sentence Entered January 12, 2015,
in the Court of Common Pleas of Fayette County,
Criminal Division, at No(s): CP-26-CR-0000398-2014

BEFORE:   FORD ELLIOTT, P.J.E., DONOHUE, and STRASSBURGER, JJ.*

MEMORANDUM BY STRASSBURGER, J.:                **FILED JULY 29, 2015**

Robert Miller (Appellant) appeals from the judgment of sentence of seven to fifteen years' incarceration after a jury convicted him of five counts of robbery; four counts each of terroristic threats and recklessly endangering another person (REAP); and one count each of theft by unlawful taking and aggravated assault.  We affirm.

The trial court summarized the testimony from Appellant's jury trial as follows.

> On January 13, 2014, Stephanie Kendall was working at the Footedale [M]arket with co-worker, Samantha Guseman, and owner, Janet Shaffer, when at approximately 8:50 p.m. Appellant walked into the store with a bandana on his face and a gun pointed at the workers.  Appellant approached the counter and instructed Kendall and Guseman not to run, but they ran to the back of the store nonetheless.  Appellant jumped over the counter to follow them while pointing the gun and demanding money.  Guseman began yelling for help from Janet Shaffer and Appellant took off in [her] direction.  Although out of her sight,

*Retired Senior Judge assigned to the Superior Court.

Kendall could hear an argument and then a gunshot. Kendall noted that money was missing from the lottery drawer and that the drawer, which had been closed prior to Appellant entering the store, was open. Kendall identified Appellant by a physical description that included his eyes, height, weight, gender, and voice.

Samantha Guseman confirmed that just prior to the 9:00 p.m. closing time, Appellant entered the Footedale Market, cocked his gun, and told her and Kendall not to run. No customers were in the store, but Janet Shaffer and her children were in the office and James Fisher, Jr. ("Jim") was in the attached apartment. While Appellant was three to four feet away and pointing the gun straight at her, Guseman summoned for Shaffer by yelling her name three or four times. Appellant kept asking where "she" was, referring to Shaffer, but Guseman would not answer him. Appellant left in Shaffer's direction and shortly thereafter Guseman heard a gunshot. Then, Guseman heard Appellant running through the store and the lottery drawer open. Guseman confirmed on the television monitor that Appellant had left the store and proceed[ed] to check on Jim who she had heard say that he "got hit." Guseman found Jim crouched over with blood on the floor and asked if they "knew the Miller boys." Guseman recognized the identity of Appellant by his voice when she confirmed that they grew up on the same street, had the same circle of friends, and stated, "[Y]ou don't forget somebody you've known your whole life." With regards to his features, Guseman testified that only Appellant's eyes and forehead were visible that night, but that his eyes are recognizable from the "piercing like bluish color."

Janet Shaffer is the owner of the Footedale Market and was in the office of the store on the evening of January 13, 2014, when she heard Guseman and Kendall yelling for her. As Shaffer stood up, Appellant met her in the doorway to the office demanding money. Shaffer refused to give him money and she felt something touch her in the nose, but could not identify it as either Appellant's hand or the gun he was carrying. Appellant continued to demand money in a violent and loud manner, and Shaffer began yelling for her boyfriend Jim, who was located directly behind the office wall in the adjoining apartment. Jim entered the office through the apartment doorway and Appellant

- 2 -

started yelling to "back the 'F' up, Jim, back up Jim." Jim slammed Shaffer back into the office portion and closed the door. From the other side of the door, Shaffer could hear Jim saying that he was shot. Shaffer was unable to provide an exact amount of money stolen from the lottery drawer because she had not counted it for the evening prior to Appellant entering the store, but she was able to estimate the amount to be between $60.00 and $100.00. Shaffer stated that she has known Appellant throughout his entire life and that she recognized his voice and eyes.

[Jim] testified that he was at the apartment adjacent to the Footedale Market on the evening of January 13, 2014, when he heard a commotion from the workers and Shaffer yelling for him. When Jim entered into the office, he saw Appellant pointing a gun at Shaffer and then turning towards him, stating "Back up, the gun's loaded, I ain't playin." The rag on Appellant's face was drooping down and Jim immediately recognized the identity of Appellant, stating that he knew Appellant "since he was born." Jim was able to slam a door shut between Appellant and Shaffer and he attempted to jump back into the apartment when Appellant fired the gun hitting Jim with a bullet through the kneecap. With regards to medical treatment, Jim had a plate put in his leg because he was shot through the joint where his knee bends and anticipates a knee replacement in the future. Jim explained that the bullet "blew [his] femur" and "destroyed [his] knee."

Trooper James A. Pierce of the Pennsylvania State Police, a criminal investigator, recovered a bullet between the hallway and the front of the store.

At trial, Appellant presented the testimony of Natalie Sykes in his defense. Sykes testified that she and Appellant were on-and-off boyfriend and girlfriend, and that he spent the entirety of the day at her house, except for a trip to the gas station and drug store around five o'clock in the afternoon. Sykes testified that the car used to go on the errands at five o'clock belonged to Appellant's mother and that when Appellant returned to Sykes's house, Appellant's mother took the car, leaving him and Sykes without a vehicle. According to Sykes, the distance from her home to Footedale Market is fifteen minutes by car and Appellant

- 3 -

did not leave until after nine o'clock when Sykes told him to leave to avoid the police.

Trial Court Opinion, 3/31/2015, at 2-6 (citations omitted).

Appellant was arrested and charged with the aforementioned offenses in connection with this incident. A jury trial was held on December 8 and 9, 2014, and the jury returned a verdict of guilty on all charges. Appellant was sentenced to seven to fifteen years' incarceration on January 12, 2015. No post-sentence motions were filed. Appellant filed timely a notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

We consider Appellant's first two issues on appeal together. In his first issue, Appellant argues that "the evidence presented by the Commonwealth was against the weight of the evidence." Appellant's Brief at 12. Throughout the entire argument section; however, Appellant cites repeatedly to the standard for a claim challenging the sufficiency of the evidence. *Id*. at 12-20. Appellant's second issue on appeal purports to challenge the sufficiency of the evidence. *Id*. at 21-22. Whether considering Appellant's arguments as challenging the weight of the evidence or the sufficiency of the evidence, Appellant is not entitled to relief.

"[A] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Failure to properly preserve the claim will result in waiver[.]" *Commonwealth v. Griffin*, 65 A.3d 932, 938 (Pa. Super. 2013). Instantly,

Appellant did not file a post-sentence motion, a written motion before sentencing, or object orally prior to sentencing. Accordingly, any issue challenging the weight of the evidence has been waived.

We consider next Appellant's challenges to the sufficiency of the evidence. We can discern only two claims from the argument section of his brief. First, Appellant argues that he did not inflict "serious bodily injury." Appellant's Brief at 19. Also, Appellant asserts that the eyewitness testimony was inconsistent and unreliable, and therefore, the Commonwealth did not prove beyond a reasonable doubt that it was Appellant who committed the crime. *Id*. at 16-19, 21-22.

In considering these claims, we keep in mind our well-settled standard of review.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses

and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Further, in viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the court must give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Harden*, 103 A.3d 107, 111 (Pa. Super. 2014) (internal quotation marks and citations omitted).

Before we address Appellant's claim that he did not inflict serious bodily injury, we consider whether it was preserved for our review.

In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient. Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt.

*Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013) (internal citation and quotations omitted).

Serious bodily injury is an element of both robbery and aggravated assault. Appellant was convicted of five counts of robbery, including counts for actually inflicting serious bodily injury[1] and threatening to inflict serious

---

[1] 18 Pa.C.S. § 3701(a)(1)(iv).

bodily injury.[2] Appellant was also convicted of aggravated assault for causing serious bodily injury with a weapon.[3]

Appellant's Pa.R.A.P. 1925(b) statement, related to robbery, states as follows: "The evidence did not show that Appellant was the individual that committed the crime of robbery in the eyewitness testimony was unreliable, and no physical evidence pointed to Appellant[.]" CONCISE ISSUE, 2/19/2015, at 1. Appellant does not mention his aggravated assault conviction in his concise statement. Because Appellant did not state specifically that he was contesting the serious bodily injury element of the aforementioned crimes in his concise statement, he has not preserved this issue for our review.[4]

We now consider Appellant's various arguments that the Commonwealth did not produce enough evidence to prove that it was Appellant who perpetrated the crimes. Appellant argues that the

---

[2] 18 Pa.C.S. § 3701(a)(1)(ii).

[3] 18 Pa.C.S. § 2702(a)(4).

[4] Regardless, Appellant's argument is puzzling. Serious bodily injury is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. Instantly, Appellant shot Jim in the leg, which "blew out [his] femur," and required him to have surgery to repair the damage. N.T., 12/8-9/2014, at 63. Jim further testified that he underwent therapy to regain use of that leg and that he may have to have a total knee replacement in the future. *Id*. Clearly, this testimony, if believed by the jury, satisfies even the most conservative definition of serious bodily injury.

Commonwealth failed to produce "the alleged weapon used at the scene of the crime (specifically an alleged gun)" and the sweatshirt worn by the perpetrator. Appellant's Brief at 17, 18. Appellant further argues that the eyewitness identifications were unreliable because 1) the eyewitnesses testified that Appellant's eyes were blue, when Appellant's eyes are actually green; and, 2) the eyewitnesses placed the gun in Appellant's right hand, even though Appellant was left-handed. *Id*. at 21-22.

We understand that "courts of this jurisdiction have recognized that where evidence offered to support a verdict of guilt is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, a jury may not be permitted to return such a finding." ***Commonwealth v. Farquharson***, 354 A.2d 545, 550 (Pa. 1976). However, the standard announced in ***Farquharson*** "applies only in such cases where the patent unreliability of the testimony is such as to render a verdict of guilt based thereupon as no more than pure conjecture." ***Commonwealth v. Hudson***, 414 A.2d 1381, 1385 (Pa. 1980) (quotations omitted).

Instantly, the Commonwealth presented testimony of three witnesses, all of whom identified Appellant as the perpetrator of the crime.

> First, Samantha Guseman who recognized the identity of Appellant by his voice and explained she was familiar with Appellant because they grew upon the same street, had the same circle of friends, and recognized Appellant's distinctive eyes. Next, the testimony of Janet Shaffer who knew Appellant through his entire lifetime, Appellant was a customer of her

store, and that she recognized his voice and eyes. Lastly, the testimony of [Jim] who testified that he knew Appellant "since he was born" and that the bandana covering Appellant's face had drooped down enough to identify him. Further Appellant spoke to [Jim] by name, telling him to "back the 'F' up, Jim, back up Jim."

Trial Court Opinion, 3/31/2015, at 10 (citations to notes of testimony omitted).

Based on this testimony, viewed in the light most favorable to the Commonwealth as the verdict winner, we cannot agree that the evidence was as unreliable and speculative as claimed by Appellant. These witnesses lived in a small town where Appellant was known to them. They recognized his voice, as well as other features. Such testimony, if believed by the jury, was sufficient to identify Appellant as the perpetrator. *See*, *e.g.*, *Commonwealth v. Love*, 896 A.2d 1276, 1283 (Pa. Super. 2006) ("We may not weigh the evidence or substitute our judgment for that of the fact-finder. … When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part, or none of the evidence."). Accordingly, Appellant is not entitled to relief on this basis.

Appellant next contends the trial court erred with respect to one of its jury instructions. Appellant's Brief at 23-24.[5] However, "[t]rial counsel's

---

[5] Appellant cites to the jury instruction regarding the testimony of Natalie Sykes, the alibi witness, which reads as follows:

failure to object to the jury instruction is fatal to Appellant's claim that the trial court erred in its charge to the jury." ***Commonwealth v. Garang***, 9 A.3d 237, 245 (Pa. Super. 2010). Thus, because counsel did not object to this jury instruction, Appellant waived his challenge thereto, and Appellant is not entitled to relief on this basis.

Finally, "Appellant contends that the Commonwealth did not rebut his alibi witness'[s] testimony." Appellant's Brief at 25. Specifically, Appellant argues that the Commonwealth did not rebut Natalie Sykes' testimony that she was with Appellant "the entire night in question." ***Id***. Appellant argues that "[s]imply relying on the misidentification of [the] Commonwealth witnesses does not rebut the alibi defense." ***Id***.

> [T]he Commonwealth is not required to rebut every specific piece of evidence introduced under an alibi defense. … The jury was not required to believe appellant's alibi witness…. The jury can believe all, some or none of the testimony of any witness[.] The burden of the Commonwealth is to present evidence that the defendant was present at the scene of the crimes charged. This it did with sufficiency to prove appellant's presence beyond a reasonable doubt. The fact that the jury

---

> In this case Natalie Sykes took the stand and you heard that she had been convicted of a crime: Hindering Apprehension or Concealment. The only purpose for which you may consider this evidence of prior conviction is to decide whether or not to believe all or part of Natalie Sykes' testimony. In doing so you may consider the type of crime committed, how long ago it was committed and how it may affect the likelihood that Natalie Sykes has testified truthfully in this case.

N.T., 12/8-9/2014, at 104.

chose to believe the Commonwealth's evidence and disbelieve appellant's alibi defense is certainly not grounds for reversal.

***Commonwealth v. Walker***, 365 A.2d 1279, 1281 (Pa. Super. 1976) (citations omitted).

Instantly, the Commonwealth presented three eyewitnesses who identified Appellant as the perpetrator of the crimes. The jury could have believed all or part of this testimony, or disbelieved the testimony of the alibi witness, to reach its verdict. As such, Appellant is not entitled to reversal on this basis.

Appellant has not presented any issue worth of relief. Accordingly, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 7/29/2015