J-S38010-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RICO CARTY HOLMES | : | |
| | : | |
| Appellant | : | No. 1320 MDA 2019 |

Appeal from the Judgment of Sentence Entered October 25, 2016,
in the Court of Common Pleas of York County,
Criminal Division at No(s): CP-67-CR-0000213-2014.

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RICO CARTY HOLMES | : | |
| | : | |
| Appellant | : | No. 1321 MDA 2019 |

Appeal from the Judgment of Sentence Entered October 25, 2016,
in the Court of Common Pleas of York County,
Criminal Division at No(s): CP-67-CR-0001515-2014.

BEFORE: KUNSELMAN, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.: **FILED NOVEMBER 17, 2020**

Rico Carty Holmes appeals from the judgments of sentence imposed at two separate dockets following his conviction of attempted homicide, conspiracy to commit robbery, robbery, multiple counts of burglary and

---

[*] Former Justice specially assigned to the Superior Court.

aggravated assault, and numerous related offenses in these consolidated appeals.[1]  Additionally, Holmes' appellate counsel has filed a petition to withdraw and an accompanying brief pursuant to **Anders v. California**, 386 U.S. 738, 744, (1967) (hereinafter the "**Anders** brief").  We grant counsel's petition, and affirm the judgments of sentence.

The relevant factual and procedural history can be summarized as follows.  On the evening of December 7, 2013, and into the morning hours of December 8, 2013, Holmes and his three co-conspirators were involved in two separate home invasions.  The first home invasion took place at a home occupied by Trenton Stevens and his girlfriend, Megan Montrose.  The second home invasion took place at an apartment occupied by Kevin Gachelin. Holmes knew both Stevens and Gachelin, and had adversarial encounters with each of them in the weeks leading up to the home invasions.

In the first invasion, Holmes and his co-conspirators, who were all wearing masks, kicked in the front door of the home, bound Stevens and Montrose, and robbed them at gunpoint.  The assailants then proceeded upstairs, where they ransacked the home and stole several rifles.  When the assailants returned downstairs, Holmes kicked Stevens about the head and torso, "and said, '[S]hut up bruh.'"  Stevens could see Holmes' eyes, and recognized his voice because Stevens had heard Holmes use that expression

---

[1] **See** 18 Pa.C.S.A. §§ 2502(a), 903(a)(1), 3701(a)(1)(ii), 3502(a)(1), 2702(a)(1).

before. Stevens did not recognize any of the other assailants. Montrose did not recognize any of the assailants, but heard Stevens call one of the assailants, "Rico."

Prior to the first invasion, Stevens had met Holmes through a school friend, Brendan Seamans. In November of 2013, approximately one month before the invasion, Holmes attended a party at Stevens' home. During the party, Stevens showed firearms to Holmes and Seamans. When attendees at the party became rowdy and started breaking things, Stevens kicked everyone out. Holmes hit Stevens on the side of his head, and then took off. Stevens had not seen Holmes since the night of the party. However, he recognized him during the home invasion.

The victim of the second home invasion, Gachelin, was an acquaintance of Stevens and Seamans. Holmes and Gachelin had encountered each other twice in the month prior to the invasion of Gachelin's apartment. After the party at Stevens' house, Gachelin heard that Holmes had punched Stevens at the party. Gachelin approached Holmes about the incident. The encounter between Gachelin and Holmes escalated to verbal insults before Holmes asked Gachelin if he wanted to "bang," which Gachelin understood to mean "fight." The two men stepped into an alley, but the situation was defused by the arrival of one of Gachelin's friends, who caused Holmes to retreat. Holmes and Gachelin encountered each other again; Holmes charged at Gachelin, and the men began fist-fighting. Seamans, who was also present, injected himself in

the fight and hit Gachelin in the back of the head. The fight ended when Gachelin pulled out an airsoft pistol. Gachelin later found Seaman's car and smashed in one of the vehicle's windows. Thereafter, Holmes called Gachelin and sent him taunting text messages in which he used the term "bruh." After the fight with Gachelin and the smashing of Seaman's car window, Holmes was overheard by Savannah Shoff as indicating on two occasions that he was "going to have to bring my boys back, and then I can get guns."

During the second home invasion at issue in this appeal, Holmes and the same co-conspirators, all wearing masks, invaded Gachelin's apartment. Gachelin testified that he was awakened and immediately assaulted by the assailants. Gachelin recognized Holmes' voice when Holmes grabbed him and stated "I'm here now, nigga. I'm here now, what's up?" Holmes also used the term "bruh" when speaking to Gachelin during the home invasion. Gachelin recalled that Holmes had also used that term in the taunting text messages he sent to Gachelin prior to the invasion. Gachelin did not recognize any of the other assailants. Gachelin was shot as he attempted to flee from the intruders. According to Gachelin, the shot came from the area where Holmes had been standing.

In February 2014, the Commonwealth charged Holmes at docket CP-67-CR-0000213-2015 for the incidents that occurred at Stevens' residence. In April 2014, the Commonwealth charged Holmes at docket CP-67-CR-0001515-2014 for the incidents which occurred at Gachelin's apartment. The

cases were consolidated for the purposes of trial. The consolidated jury trial commenced in July 2016. Two of Holmes' co-conspirators, Leonard Hayes and Andre Highsmith, testified against Holmes at trial. Both Hayes and Highsmith indicated that they hoped to secure leniency in their own criminal cases by testifying as Commonwealth witnesses in the case against Holmes. When presenting their versions of the invasions to the jury, Hayes and Highsmith identified Holmes as either the mastermind of the conspiracy, or one of the masterminds along with Seamans. Hayes and Highsmith also downplayed their own roles, and provided slightly different accounts of the invasions. However, both co-defendants testified that Seamans stayed in the car during both invasions, and that Holmes carried a gun during both invasions and that he shot Gachelin. At the conclusion of trial, the jury found Holmes guilty of numerous counts at both dockets. On October 25, 2016, the trial court imposed an aggregate prison sentence of 25½ to 51 years.[2] Holmes filed timely post-sentence motions, which the trial court denied.

---

[2] On case CP-67-CR-0000213-2014, the trial court imposed an aggregate sentence of 11½ to 23 years in prison. On case CP-67-CR-0001515-2014, the trial court sentenced Holmes to 10 to 20 years for criminal attempt homicide, to be served consecutively to his sentence in CP-67-CR-0000213-2014. Also in CP-67-CR-0001515-2014, for burglary, the trial court sentenced Holmes to 4 to 8 years in prison, to be served consecutively to the criminal attempt homicide sentence.

Following a procedural history not relevant herein,[3] Holmes timely appealed the judgment of sentence imposed at each docket. Both Holmes and the trial court complied with Pa.R.A.P. 1925. Thereafter, this Court consolidated the appeals for ease of disposition. Additionally, in this Court, Holmes' appellate counsel filed a petition to withdraw and an **Anders** brief. Holmes did not retain independent counsel or file a *pro se* response to the **Anders** brief.

Before we may consider the issues raised in the **Anders** brief, we must first consider counsel's petition to withdraw from representation. **See Commonwealth v. Garang**, 9 A.3d 237, 240 (Pa. Super. 2010) (holding that, when presented with an **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw). Pursuant to **Anders**, when counsel believes an appeal is frivolous and wishes to withdraw from representation, he/she must do the following:

> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record, counsel has determined the appeal would be frivolous; (2) file a brief referring to any issues that might arguably support the appeal, but which does not resemble a no-merit letter; and (3) furnish a copy of the brief to the defendant and advise him of his right to retain new

---

[3] Following the filing of post-sentence motions, Holmes' counsel withdrew from representation and indicated that the Office of the Public Defender would assume representation. However, that did not occur. Consequently, Holmes successfully petitioned the Post Conviction Relief Act ("PCRA") court to reinstate his direct appeal rights. When his direct appeals were later dismissed for non-compliance with appellate procedural rules, Holmes again successfully petitioned the PCRA court to reinstate his direct appeal rights.

counsel, proceed *pro se*, or raise any additional points he deems worthy of this Court's attention.

***Commonwealth v. Edwards***, 906 A.2d 1225, 1227 (Pa. Super. 2006) (citation omitted). In ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009), our Supreme Court addressed the second requirement of ***Anders***, *i.e.*, the contents of an ***Anders*** brief, and required that the brief

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 978 A.2d at 361. Once counsel has satisfied the ***Anders*** requirements, it is then this Court's responsibility "to conduct a simple review of the record to ascertain if there appear on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated." ***Commonwealth v. Dempster***, 187 A.3d 266, 272 (Pa. Super. 2018).

Here, counsel has complied with each of the requirements of ***Anders***. Counsel indicated that he conscientiously examined the record and determined that an appeal would be frivolous. Further, counsel's ***Anders*** brief comports with the requirements set forth by our Supreme Court in ***Santiago***. Finally, the record includes a copy of the letter that counsel sent to Holmes

stating counsel's intention to seek permission to withdraw, and advising Holmes of his immediate right to proceed *pro se* or retain alternate counsel and file additional claims. Accordingly, counsel has complied with the procedural requirements for withdrawing from representation, and we will conduct an independent review to determine whether Holmes' appeal is wholly frivolous.

In the **Anders** Brief, counsel raises the following issues:

I. Whether the trial court erred in denying [Holmes'] post[-]sentence motion arguing that the [jury's] verdicts were against the weight of the evidence as:

    a. [The victims'] identifications of [the] perpetrators with guns in masks based on limited prior dealings with [Holmes] lacks the reliability [needed] to sustain a conviction beyond a reasonable doubt.

    b. The cooperating witnesses' testimony was not credible as it was given in exchange for lenient plea offers, changed multiple times [throughout] the court proceedings and contradicted testimony of other Commonwealth witnesses.

**Anders** Brief at 4 (excess capitalization omitted).

In both of Holmes' sub-issues, he challenges the weight of the evidence supporting his guilty verdicts. The following legal principles apply when a challenge to the weight of the evidence supporting a conviction is presented to the trial court:

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most

- 8 -

favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

**Commonwealth v. Widmer**, 744 A.2d 745, 751-52 (Pa. 2000) (citations, footnotes and quotation marks omitted). Thus, to allow an appellant "to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the [trial] court." **Commonwealth v. Talbert**, 129 A.3d 536, 545 (Pa. Super. 2016) (internal citation omitted).

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence*. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis in original, internal citations omitted).

The first weight challenge that appellate counsel raises in the *Anders* brief concerns the reliability of the identification testimony provided by Stevens and Gachelin. Counsel queries whether the verdicts are against the weight of the evidence given that Stevens and Gachelin had limited prior dealings with Holmes, and all of the assailants wore masks during both home invasions. However, counsel believes that this issue is frivolous because Stevens and Gachelin testified as to their prior contacts with Holmes and the particular circumstances that they believed led up to the incidents in question. Counsel points out that both Stevens and Gachelin presented reasons why Holmes would want to rob and assault them. Further, both Stevens and Gachelin testified that they recognized Holmes' voice and provided, in detail, as to why they believed Holmes was the individual who assaulted them. Counsel also points out that, although the identification testimony provided by Stevens and Gachelin was limited, it was not the only evidence presented at trial regarding Holmes' involvement in the home invasions. Counsel asserts the jurors were free to give any weight they desired to the identification testimony provided by Stevens and Gachelin.

The trial court considered the first weight challenge raised in the *Anders* brief and determined that it lacked merit for the same reasons as stated by appellate counsel. The trial court reasoned as follows:

When we review the evidence challenged we find that all three of the victims testified to [Holmes] being recognized as one of the home intruders. Regarding identification, . . . Montrose's testimony amounted to little more than reporting that . . . Stevens had, seemingly, recognized [Holmes] at the time that [Holmes] kicked . . . Stevens about his head and torso. Thus, the extent of . . . Montrose's testimony, in this regard, was to present . . . Stevens' present-sense impression. The fact that both . . . Stevens and . . . Gachelin recognized [Holmes] from his speech pattern and usage of the term "bruh" strengthens the identification. Whether . . . Stevens' and . . . Gachelin's experience with was limited is subjective. The simple fact is that two disparate individuals associated [Holmes] with the term "bruh." Moreover, . . . Stevens knew [Holmes'] voice and recognized his eyes. It was for the jury to weigh whether or not this was enough and this [c]ourt was not shocked that the jury returned a verdict of guilt connecting [Holmes] to these home invasions.

Trial Court Opinion, 6/18/20, at 16.

We discern no abuse of discretion by the trial court in arriving at its determination that the verdicts of guilt did not shock the conscience despite the fact that all of the assailants wore masks during both home invasions, and that Stevens and Gachelin had limited prior dealings with Holmes. In the trial court's view, the jury was presented with identification testimony linking Holmes to the crimes that was not tenuous, vague, or uncertain. *Talbert*, 129 A.3d at 545. As we give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is not against the weight of the evidence, we agree with appellate counsel that the first weight challenge is frivolous.

The second weight challenge raised by appellate counsel in the *Anders* brief concerns the reliability of the testimony provided by Holmes' co-

defendants, Hayes and Highsmith. Counsel queries whether the verdicts are against the weight of the evidence, given that there were differences in the accounts provided by these co-defendants as to what occurred, and efforts by both of them to minimize their complicity in the invasions. Nonetheless, counsel maintains that this weight challenge is frivolous because the co-defendants testified that their only connection to the victims was through Holmes. Counsel points out that both Hayes and Highsmith pointed to Holmes as either the primary assailant or at least one of the ringleaders of the conspiracy. According to counsel, although there were differences in certain particulars provided by Hayes and Highsmith, there was a coherent narrative thread throughout both accounts. Counsel asserts that any conflict in their respective testimonies was a matter to be reserved solely by the jury when assessing weight and credibility.

Counsel also points out that, although both co-defendants expected significant consideration from the Commonwealth in exchange for their testimony, their collective motivation to get out of jail does not require the jury to disregard their testimony. Counsel argues that the co-defendant's testimony did not occur in a vacuum, and their credibility could be assessed by the jury in conjunction with other evidence that was presented. Counsel notes that the account provided by each co-defendant corroborated key facts presented by the other co-defendant, as well as the victims and other witnesses in the case.

The trial court considered the second weight challenge raised in the *Anders* brief and determined that it was frivolous. The trial court reasoned as follows:

> Regarding the co[-]defendant's testimony, we note that the Commonwealth did not present one co[-]conspirator's testimony; but, rather, the Commonwealth presented multiple confederates' testimony that was submitted to the test of cross-examination. There surely were differences in the recounting and minimization of guilt as the co[-]conspirators sought to distance themselves from some of the most egregious facts of the case. Nonetheless, both co[-]conspirators testified that their only connection to the case was [Holmes]. They both pointed to [Holmes] as the ringleader or one of the ringleaders along with . . . Seamans. Though there were differences in particulars about who was holding what weapon, there was a coherent narrative thread throughout both accounts. . . . Seamans was to have remained in the vehicle during the assaults. [Holmes], in both accounts, always had a gun. According to both co[-]conspirators, [Holmes] shot . . . Gachelin. Moreover, these matters complained of ignore the weight added to the verdict by Ms. Savannah Shoff's testimony. Ms. Shoff observed the physical altercation between . . . Gachelin, [Holmes], and . . . Seamans that preceded the home invasions. Ms. Shoff went on to recount how [Holmes] reacted to this altercation. Specifically, Ms. Shoff stated that on the way to the hotel, [Holmes] "kept saying, like, I'm sorry, but I'm going to have to bring my boys back, and then I can get guns[.]" Once at the hotel and after . . . Gachelin had broken a window in . . . Seaman's car, Ms. Shoff heard [Holmes] state, again, that "he was sorry, but he's going to have to bring his boys back, and then he can get guns, and everything's going to be okay."

> As we state in almost every appeal vis-à-vis a weight of the evidence challenge, it is true that there are certainly pieces of evidence which arguably undermine the Commonwealth's case; however, the test is not whether there is any evidence that goes against the Commonwealth's assertions. Rather, this [c]ourt is to examine whether the verdict was "so contrary to the evidence as to shock one's sense of justice." There was evidence upon which a jury might have founded an acquittal. For instance, the assailant's faces were concealed. However, in light of the evidence favoring conviction, already recounted *supra*, we are

- 13 -

not shocked by the verdict and, therefore, we were barred from overturning that verdict.

Trial Court Opinion, 6/18/20, at 16-18 (citations to the record omitted).

We discern no abuse of discretion by the trial court in reaching its conclusion that the verdicts of guilt did not shock its conscious, despite certain conflicts in the testimony provided by the co-defendants, and their clear motivation to secure leniency in their own criminal cases. In the trial court's view, the testimony provided by the co-defendants was consistent with the testimony provided by the victims and the other witnesses in many critical respects, including Holmes' role as a mastermind of the conspiracy, a principal actor in the invasions, and the individual who shot Gachelin. As we give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is not against the weight of the evidence, we agree with appellate counsel that the second weight challenge is frivolous.

Finally, as required by **Anders**, we have independently reviewed the record in order to determine whether there are any non-frivolous issues present in this case. Our independent review of the record discloses no other non-frivolous issues that Holmes could have raised that his appellate counsel overlooked. **See Dempster**, **supra**. Having concluded that there are no meritorious issues, we grant counsel's petition to withdraw and affirm Holmes' judgments of sentence.

- 14 -

Petition to withdraw granted. Judgments of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/17/2020