J-S07016-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: THE ADOPTION OF W.R.S. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.M., FATHER | : | No. 1036 WDA 2021 |

Appeal from the Decree Entered August 9, 2021
In the Court of Common Pleas of Indiana County Orphans' Court at
No(s):  32-20-0414

BEFORE:   OLSON, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SULLIVAN, J.:                    **FILED: MAY 02, 2022**

L.M. ("Father") appeals from the decree granting the petition to involuntarily terminate his parental rights to his daughter, W.R.S. ("Child"). Additionally, Father's counsel has filed a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and a petition to withdraw from representation.  We deny counsel's petition to withdraw and direct counsel to file an advocate's brief.

Our review of the certified record reflects the following factual and procedural history.  Father and M.T. ("Mother") were in a non-committed relationship when Mother informed Father of her pregnancy.  N.T., 7/26/20, at 10, 12-14.  Father, who had been convicted and sentenced for drug-related offenses, was incarcerated when Child was born in June 2016.  ***Id***. at 12-14. The parents had no further contact until about a year after Child's birth, when

_____

[*] Retired Senior Judge assigned to the Superior Court.

Mother received a letter that Father sent her from prison. *Id*. at 12. Father remained in prison until April 2019, during which time he frequently sent Mother letters. *Id*. at 37.

Shortly after Child's birth, Mother began a relationship with B.T. ("Stepfather"). *Id*. at 27-28. Mother and Stepfather began living together in June 2017, and married in July 2020. *Id*. at 28. Stepfather has assisted in raising Child and supporting her financially, and has been the sole paternal figure in her life. *Id*. at 17-18.

Father's first and only contacts with Child occurred following his release from prison in 2019. According to Mother, Father attended a birthday party for Child in July 2019, and "got her some birthday presents and cupcakes, and he just talked with [Stepfather] mostly." *Id*. at 15. Father saw Child a second time "maybe three or four weeks later." *Id*. Mother's recollection of this interaction is that Father "got to see [Child] and have a conversation with her and she just kept on playing." *Id*. Father has not seen Child since then, nor has he sent cards or gifts. *Id*. at 15-16. In addition, Father has never provided financial support for Child. *Id.* at 16. Mother claimed that Father made little effort to maintain a relationship with Child despite having opportunities to do so. *Id*. at 16-20, 23-24.

Father generally blamed Mother for his lack of contact with Child, contending that Mother prevented contact, and that he was afraid she would pursue criminal charges if he continued to seek contact. *Id*. at 40-51. Mother acknowledged that: (1) she blocked Father on Facebook and possibly her

phone;[1] (2) she would not have allowed Father to have even supervised contact with Child if he had requested it; and (3) that Father would not have known the address where she resided for the last two years. *Id*. at 17, 21-26.

Father's last contact with Mother involved an exchange of heated text messages that occurred sometime in 2020. *Id*. at 23, 41-42. In Mother's version of the text messages, Father learned that Stepfather wanted to adopt Child and "got angry and he just texted me a lot of negative names and then I just blocked him." *Id*. at 23. Father claimed that he sent text messages to Mother "through March and May of 2020" to try to arrange contact with Child, but Mother acted "controlling." *Id*. at 42.

In the months following the exchange of text messages, Father learned of Mother's new address, apparently from a third party. *Id*. at 41. He then filed a complaint for custody and a complaint to establish paternity/request for genetic testing. Father's custody and paternity pleadings are not present in the record, but the trial court indicates that Father filed these pleadings on or about October 13, 2020. One week later, on October 21, 2020, Mother and Stepfather filed a petition to involuntarily terminate Father's parental rights to Child, as well as a petition for adoption. After a continuance, the trial court conducted a termination hearing on April 13, 2021, and entered a decree on

---

[1] At the termination hearing, Mother asserted that she was no longer blocking Father on Facebook but did not indicate when the blocking ended. *See* N.T., 7/26/21, at 22.

April 16, 2021, granting the petition to involuntarily terminate Father's parental rights to Child.

On April 20, 2021, despite the involuntary termination of Father's parental rights, the trial court conducted a hearing on Father's complaint to establish paternity/request for genetic testing. At the hearing, Father claimed that, although he was aware that the original termination hearing had been continued, he did not receive notice of the rescheduled hearing date of April 13, 2021. In light of this information, the trial court vacated the April 16, 2021 decree and scheduled a new termination hearing.

On July 26, 2021, the trial court conducted a second termination hearing at which Mother, Stepfather, and Father testified.[2] On August 9, 2021, the court entered a decree granting Mother and Stepfather's petition to involuntarily terminate Father's parental rights to Child. Father's counsel filed a notice of appeal and a concise statement of errors complained of on appeal.[3] Father's counsel also filed a statement of intent to file an ***Anders*** brief. The trial court then ordered Father to file a second concise statement, and Father

---

[2] The trial court appointed counsel to represent Child's legal interests.

[3] Father's notice of appeal is not in the trial court record. Upon review, it appears that the trial court transmitted the original notice of appeal to this Court, rather than a copy. ***See*** Pa.R.A.P. 905(b) (providing that "[t]he clerk [of the trial court] shall immediately transmit to the prothonotary of the appellate court named in the notice of appeal a copy of the notice of appeal").

timely complied.[4]  In this Court, Father's counsel filed an **Anders** brief and petition to withdraw from representation.

When presented with an **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.  **See Commonwealth v. Garang**, 9 A.3d 237, 240 (Pa. Super. 2010).  Pursuant to **Anders**, when counsel believes an appeal is frivolous and wishes to withdraw from representation, he/she must do the following:

> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record, counsel has determined the appeal would be frivolous; (2) file a brief referring to any issues that might arguably support the appeal, but which does not resemble a no-merit letter; and (3) furnish a copy of the brief to the defendant and advise him of his right to retain new counsel, proceed *pro se,* or raise any additional points he deems worthy of this Court's attention.

**Commonwealth v. Edwards**, 906 A.2d 1225, 1227 (Pa. Super. 2006) (citation omitted).  In **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009), our Supreme Court addressed the second requirement of **Anders**, *i.e.*, the contents of an **Anders** brief, and required that the brief:

> (1)    provide a summary of the procedural history and facts, with citations to the record;
>
> (2)    refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3)    set forth counsel's conclusion that the appeal is frivolous; and

---

[4] The trial court docket indicates that Father filed his second concise statement on September 13, 2021; however, it is absent from the trial court record.

(4)    state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. This Court extended the *Anders* principles to appeals involving the termination of parental rights. *See In re V.E.*, 611 A.2d 1267, 1274-75 (Pa. Super. 1992). "Once counsel has satisfied the [*Anders*] requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." *Edwards*, 906 A.2d at 1228 (citation omitted).

Here, counsel avers in her petition to withdraw that she conducted a thorough and conscientious review of the record and applicable case law, and thereafter determined that there are no meritorious grounds to support Father's appeal. Counsel further avers that she mailed Father copies of the petition and the *Anders* brief, as well as correspondence explaining Father's rights to retain private counsel or proceed *pro se* and raise any additional arguments he believes are meritorious. Counsel's *Anders* brief includes a summary of the facts and procedural history of the case, a list of issues that could arguably support Father's appeal, and counsel's analysis of why the issues lack merit, with citations to the record and minimal legal authority. We conclude counsel has technically complied with the requirements of the *Anders* procedure. Accordingly, we will conduct an independent review to determine whether Father's appeal is wholly frivolous.

- 6 -

In the **Anders** brief, counsel identifies the following issues for our review:

> 1. Did the trial court commit [an] abuse of discretion or error of law when it concluded that [appellees] established grounds for termination pursuant to 23 Pa.C.S.A. 2511(a)(1)?
>
> 2. Did the trial court commit [an] abuse of discretion or error of law when it concluded that the termination of parental rights was appropriate and in [C]hild's best interest pursuant to 23 Pa.C.S.A. 2511(b)?

**Anders** Brief at unnumbered 14 (unnecessary capitalization omitted).

Appellate review in cases involving the involuntary termination of parental rights is limited to determining whether the trial court's decision is supported by competent evidence. **See In re Adoption of C.M.**, 255 A.3d 343, 358 (Pa. 2021). When applying this standard of review, an appellate court must accept the findings of fact and credibility determinations of the trial court if they are supported by evidence of record. **Id.** Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion. **Id.**

Pennsylvania's Adoption Act governs involuntary termination of parental rights proceedings. **See** 23 Pa.C.S.A. §§ 2101-2938. Subsections 2511(a) and (b) of the Adoption Act set forth the grounds a petitioner must prove in order for the court to grant an involuntary termination of parental rights. **See** 23 Pa.C.S.A. § 2511. Subsection (a) provides eleven types of parental conduct which would provide grounds for involuntary termination. **Id.** §

2511(a). If the trial court finds clear and convincing evidence supporting the existence of one of the grounds for termination set forth in subsection (a), the court must then consider whether termination would best serve the child under subsection (b). *Id.* § 2511(b).

In the instant matter, the trial court terminated Father's parental rights to Child pursuant to sections 2511(a)(1) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> * * * *
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

To satisfy the requirements of section 2511(a)(1), the party requesting termination must prove conduct by the parent, sustained for at least the six months immediately prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or

- 8 -

failure to perform parental duties. *See In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008). Though we do not adhere to any strict definition of "parental duty," a child has a right to essential parental care, and our jurisprudence reveals certain irreducible qualities of a parent's attendant obligation. *C.M.*, 255 A.3d at 364. Foremost, it is a positive duty requiring affirmative performance. *Id*. Additionally, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life. *Id*. (noting that communication and association are essential to the performance of parental duties).

However, even where the evidence clearly establishes that a parent has failed to perform affirmative parental duties for a period in excess of six months, the court must examine the individual circumstances and any explanation offered by the parent to determine if that evidence, in light of the totality of circumstances, clearly warrants permitting the involuntary termination of parental rights. *Id*. In other words, even if competent evidence establishes the statutory criteria under subsection (a)(1), consideration of the totality of the circumstances includes evaluation of the following: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between the parent and child, if any, including any efforts made by the parent to reestablish contact with the child; and (3) the effect that termination of parental rights would have on the child pursuant to subsection (b). *Id*. at 365.

It is within this framework that a trial court determines whether a parent has faced barriers that prevented the parent from maintaining the parent-child relationship. *See In re Adoption of L.A.K.*, 265 A.3d 580, 593 (Pa. 2021). What may constitute a "barrier" in the context of a section 2511(a)(1) analysis will vary with the circumstances of each case. *Id*. "In some instances, obstructive behavior by the child's custodian presents a barrier to the parent's ability to perform parental duties, which mitigates the parent's failure to maintain the parent-child relationship." *Id*. In other instances, trial courts have found substance abuse, mental health issues, homelessness, joblessness, criminal charges, or a confluence of some or all of these issues created barriers to the maintenance of the parent-child relationship. *Id*.

Recently, in *C.M.*, our Supreme Court considered the significance and effect of custody-related legal filings by a parent in a section 2511(a)(1) analysis. In that case, mother rebuffed father's requests to see the child for years and eventually stopped answering his calls and instructed him not to contact her. After more than two years, father filed a custody action. Two months later, mother and maternal grandparents sought the termination of father's parental rights. The *C.M.* Court ruled that because father had initiated and actively pursued a complaint for custody in the two months prior to the filing of the termination petition, including attending court-ordered mediation and conciliation proceedings, his actions demonstrated an affirmative performance of his parental duties to the maximum extent apparent at the

time and under the circumstances. *C.M.*, 255 A.3d at 368. The *C.M.* Court explained that a parent's efforts to enforce his or her legal custody rights unquestionably establish the affirmative performance of a positive parental duty, and that when such action is taken in the face of a custodial parent's efforts to thwart access to the child, the attempts to enforce custodial rights provide evidence that is highly relevant to the question of whether the requirements of section 2511(a)(1) have been met. *Id*. at 367. In the *C.M.* Court's view, "because . . . [f]ather continuously exercised parental duties during the two months preceding the filing of the petition, appellants did not meet their burden to establish by clear and convincing evidence he failed or refused to perform parental duties, or a settled purpose of relinquishment, for a period of at least six months immediately preceding the filing of the petition." *Id*. (internal citations omitted).

A few months after deciding *C.M.*, our Supreme Court again considered the significance and effect of custody-related legal filings by a parent in a section 2511(a)(1) analysis. *See L.A.K.*, *supra*. In *L.A.K.*, father refrained from contact with his children until he had attained a year of sobriety, and then instituted a legal action to modify the existing custody order so that he could begin to establish a relationship with them. Approximately one week later, mother and stepfather filed petitions to involuntarily terminate father's parental rights, which the trial court denied. Our Supreme Court concluded

the trial court acted within its discretion by denying termination. The **L.A.K.**

Court explained its reasoning, as follows:

> As in **C.M.**, this legal action constituted the affirmative performance by father of a positive parental duty in the crucial six-month period before appellees filed the termination petitions. Based upon our ruling in **C.M.**, father must be credited for his assertion of custody rights during the crucial six-month period. Thus, appellees failed to provide clear and convincing evidence that father failed or refused to perform parental duties, or demonstrated a settled purpose of relinquishment during the six-month period immediately preceding the filing of the termination petitions.

**Id**. at 594-95 (footnote and unnecessary capitalization omitted). The **L.A.K.**

Court reiterated that "[i]t is crystal clear, and of vital importance . . . that a

parent's legal efforts to enforce custodial rights demonstrate affirmative

performance of a positive parental duty." **Id**. at 594 (citing **C.M.**, 255 A.3d

at 367).

Although **C.M.** was decided four months prior to the filing of the **Anders**

brief, Father's counsel did not acknowledge that decision, or discuss the

significance of custodial legal filings in a section 2511(a)(1) analysis.[5]

The trial court acknowledged **C.M.** in its Pa.R.A.P. 1925(a) opinion, but

determined that **C.M.** was factually and legally distinguishable on the basis

that, although Father filed the custody complaint one week before the

termination petition was filed, he "did not then actively pursue the custody

---

[5] We note that our Supreme Court's decision in **L.A.K.** was filed in November 2021, which was after counsel filed the **Anders** brief and after the trial court filed its Rule 1925(a) opinion.

complaint." Trial Court Opinion, 9/17/21, at 6. In the trial court's view, "the filing of the custody complaint without any other substantive affirmative action does not remedy [Father's] failure to perform any parental duties." *Id*. (unnecessary capitalization omitted).

We recognize that the *C.M.* Court seemed to emphasize the fact that, in the two months after father filed his custody complaint and before the filing of the termination petition, father actively pursued his custody complaint by participating in court-ordered mediation and conciliation. However, in *L.A.K.*, as in the instant matter, the Court was confronted with a one-week period between father's filing of the complaint for custody and the filing of the petition for termination of his parental rights. Importantly, the *L.A.K.* Court did not emphasize a need to actively pursue a custody filing in order to avoid involuntary termination of parental rights. Instead, the *L.A.K.* Court made clear that, under the circumstances of that case, the mere filing of the custody complaint, without more, "constituted the affirmative performance by father of a positive parental duty in the crucial six-month period before appellees filed the termination petitions" which prevented appellees from meeting their evidentiary burden under subsection 2511(a)(1). *L.A.K.*, 265 A.3d at 595.

In the instant matter, Father, like the father in *L.A.K.*, filed for custody approximately one week before Mother and Stepfather filed the termination petition. Given the brief period between Father's custody filing and the termination filing, Father would have had little, if any, opportunity to litigate

the custody filing in that one-week period. Under these circumstances, *L.A.K.* makes clear that the filing for custody one week prior to the filing of a termination petition is sufficient, by itself, to preclude the involuntary termination of parental rights under section 2511(a)(1).

We further observe that, in the instant matter, Mother took affirmative steps to block Father's ability to communicate with her via phone and Facebook, and to hinder Father's ability to ascertain her whereabouts. This obstructive behavior by Mother is precisely the type of "barrier" which mitigates a parent's failure to maintain the parent-child relationship in the context of a section 2511(a)(1) analysis. *L.A.K.*, 265 A.3d at 593. In the face of Mother's attempts to thwart Father's access to Child, Father's efforts to enforce his legal custody rights to Child unquestionably established the affirmative performance of a positive parental duty under section 2511(a)(1). *See C.M.*, 255 A.3d at 367.

In light of *C.M.* and *L.A.K.*, our independent review reveals an issue of arguable merit overlooked by Father's counsel; namely, that Father's filing of a custody complaint one week preceding the filing of the termination petition constitutes the affirmative performance of a positive parental duty under section 2511(a)(1). As Father's counsel overlooked this non-frivolous issue, we deny counsel's petition to withdraw. *See In re Adoption of M.C.F.*, 230 A.3d 1217, 1220 (Pa. Super. 2020) (holding that, when counsel overlooks an arguably meritorious issue in a parental termination appeal, the appropriate

remedy is to deny the petition to withdraw and remand for an advocate's brief). We therefore direct Father's counsel to file an advocate's brief within thirty days from the date of this decision. Mother and Stepfather shall have thirty days thereafter to file a supplemental response brief, should they decide that one is warranted.

Petition to withdraw denied. Counsel for appellant is directed to file an advocate's brief consistent with this memorandum.